UNITED STATES of America, Plaintiff,

v.

Forest BAILEY, et al., Defendants.

No. 87 CR 276.

United States District Court,
N.D. Illinois, E.D.

Nov. 4, 1987.

---

26. Additional Brief at 6.

27. Additional Brief at 4.

---

James Ferguson, Asst. U.S. Atty., Mark Pollack, Chicago, Ill., for plaintiff.

Carlton E. Odim, Chicago, Ill., for Forest Bailey.

Michael Goode, Lincolnwood, Ill., Walter Jones, Curiel & Jones, Chicago, Ill., for Patrick McClurkin.

Jeffrey Steinbeck, Genson, Steinbeck & Gillespie, Chicago, Ill., for Aaron Long.

Elliott Samuels, Chicago, Ill., for Harrison.

Donald Bertucci, Chicago, Ill., for Perry Hutchinson.

William Mansker, Chicago, Ill., for Walter McCullins.

Marianne Jackson, Chicago, Ill., for Williams.

Isaih Gant, Chicago, Ill., for Janis McWilliams.

Gerald J. Collins, Chicago, Ill., for Ben Israel.

William Theis, Chicago, Ill., for Margaret Neely.

Tom Peters, Chicago, Ill., for Cornell Stokes.

Chris Goodman, Chicago, Ill., for Anthony Miller.

Miriam Miquelon, Chicago, Ill., for Harold Willis.

George Howard, Chicago, Ill., for Allen Griffin.

John Theis, Chicago, Ill., for Clinton Donald.

Edwin Byrd, Chicago, Ill., for Carl Langley.

Roberta Samotny, Chicago, Ill., for Sharon Long.

June Fournier, Hillside, Ill., for Joyce Jones.

Robert B. McGee, Chicago, Ill., for Leonard Cade.

Sheldon Nagelburg, Chicago, Ill., for Curtis Thompson.

Earl Williams, Chicago, Ill., for Janice Richardson.

Louis Myers, Chicago, Ill., for Steve Johnson.

Everett McLeary, c/o Dellsher Investment Co., Chicago, Ill., for Norman Cross.

Shelly Kulwin, Chicago, Ill., for Sadie Davis.

Vester Van, Chicago, Ill., for Ronald Lewis.

Roosevelt Thomas, Chicago, Ill., for James Hope.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

A grand jury has jointly indicted twenty-nine individuals who allegedly participated in a scheme to defraud various insurance companies through the staging of fake car-accidents and the subsequent submission of fraudulent personal-injury and wage-loss claims to those insurance companies. The forty-eight count indictment charges that pursuant to this scheme these individuals conspired to commit an offense against the United States in violation of 18 U.S.C. § 371 (Count One), committed mail fraud in violation of 18 U.S.C. § 1341 (Counts Two through Thirty–Five), conducted the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) (Count Thirty–Six) and/or made false material-statements on their income-tax returns in violation of 26 U.S.C. § 7206(1) (Counts Forty–Six through Forty–Eight). The indictment further charges that the defendants Forest Bailey, Perry Hutchinson, Patrick McClurkin and Aaron Long subsequently conspired to obstruct justice by endeavoring to ensure that certain individuals would not disclose information regarding the car-accident scheme to either federal investigators or the grand jury itself in violation of 18 U.S.C. §§ 371 and 1503 (Counts Thirty–Seven through Thirty–Nine). Finally, defendants Sadie Davis, Carl Langley, Anthony Miller, Janice Richardson and Joyce Jones are indicted for allegedly making false material-declarations to the grand jury in violation of 18 U.S.C. § 1623.

In the course of the last few months, the defendants have filed a number of pretrial motions. The court has ruled orally on each of the motions and, pursuant to its practice in large criminal cases such as this, issues this opinion which summarizes the oral rulings.[1] In case the contents of this opinion differ materially from the court's oral rulings, this opinion controls. Consequently, after the issuance of this opinion, the parties should *immediately* raise with the court any proposed amendments they may have to this written order. Once the trial of this matter begins, the court will consider this to be the court's final order to which any further objections will have been waived.

## I

### *Neely's Motion for Issuance of Subpoenas at Government Expense*

Pursuant to Federal Rule of Criminal Procedure 17(b), the court on October 2, 1987 authorized the defendant Margaret Neely to issue subpoenas at government expense.

## II

### *Motion for Preservation of Agent's Notes*

The court granted this motion and ordered the government to direct government agents to preserve all "notes" as defined in Hutchinson's motion.

## III

### *Discovery Requests*

A. *Hutchinson's Motion to Compel Disclosure*

Hutchinson moved for an order compelling the government to produce certain information. Because Hutchinson represented on the face of his motion that an agreement between him and the government could not be reached regarding the subject of his motion,[2] the court addressed the merits of his motion and ruled in the following manner.

### 1. Statements of Hutchinson

The court ordered the government to produce all tapes and transcripts of any tape-recorded conversations relating to the matters alleged in the indictment by Wednesday, October 21, 1987. The court further ordered the government to designate by that same date any parts of the tapes which the government does *not* intend to offer in evidence. The defendants had until Wednesday, October 28, 1987 to make their alternate designations, propose alternative transcriptions and file motions in limine regarding those same tapes.

■ Hutchinson also requested production of any tapes which the government intends to use as impeachment evidence and are related to another case in which he is a defendant, *United States v. Finley, et al.,* No. 87 CR 364 (N.D.Ill.). In its response to that request, the government stated that the *Finley* tapes are not "relevant" to this case within the meaning of Federal Rule of Criminal Procedure 16(a)(1)(A) and hence are not properly discoverable even though those tapes might be used to impeach the defendant should he choose to testify. This court rejected the government's argument and ordered the government to produce any tapes and transcripts related to *Finley* which the government *might* use to impeach Hutchinson. The test for relevance of course is whether the evidence tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The court considers impeachment evidence, i.e., evidence attacking the credibility of a witness, to be "relevant" because that evidence aids the jury in evaluating the probative value of other evidence offered to affect the probability of the existence of a consequential fact. McCormick, *Evidence* § 29, at 58 (2d ed. 1972); 1 J. Weinstein & M. Berger,

---

1. Only ten of the twenty-nine defendants are actually going to trial. In the interests of efficiency, the court concerns itself now with only the motions of the remaining ten defendants.

2. This court interprets the federal and local rules to require a genuine dispute before a party files a discovery motion. *See United States v. Davis,* 673 F.Supp. 252, 255 (N.D.Ill.1987) (Williams, J.).

*Weinstein's Evidence* ¶ 401[05], at 401–28 (1985). The Seventh Circuit on at least one occasion has stated that impeachment evidence is admissible as probative and hence relevant. *United States v. Stone*, 471 F.2d 170, 172 (7th Cir.1972), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1898, 36 L.Ed.2d 391 (1973). Based on the foregoing, the court concludes that statements of the defendant which the government will use to impeach the defendant are discoverable under Rule 16.

Although the government did not raise this argument, this court's order could be interpreted as placing on the government the impossible burden of predicting what the defendant will testify to should he take the stand. The court, however, does not expect the government to be a soothsayer in this case. Instead, the court merely is ordering the government to produce statements of the defendant which it *presently* believes *might* be used for impeachment purposes. *See United States v. Bailleaux*, 685 F.2d 1105, 1114 (9th Cir.1982) ("Where the Government is in doubt, the written or recorded statement should be disclosed, if a proper request is made"). *But see United States v. Gleason*, 616 F.2d 2, 25 (2d Cir. 1979) (the government is not obligated under Rule 16(a) to anticipate every possible defense, assume what the defendant's trial testimony will be, and then furnish the defendant with otherwise irrelevant material that might conflict with his testimony), *cert. denied*, 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 and 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980). Because the defendant cannot review the statements at issue, Rule 16 can serve its intended purpose only if the government takes a broad view of what is relevant for purposes of

that rule.[3] *See Bailleaux*, 685 F.2d at 1114.

█ The court having ordered the government to produce both the tapes and transcripts of both the *Bailey* and the *Finley* tapes, Hutchinson probed for more. He asserted in open court that not only should the court require the government to produce the final transcripts; the court should also order production of any preceding drafts of those transcripts in the government's possession. Hutchinson argues that, because the tapes at issue are so inaudible, he should be able to show the jury that the government went through numerous drafts of the transcripts before the government settled on a final set. In support of his argument, Hutchinson cites Judge Rovner's recent opinion in *Finley* in which she ordered the government to produce *any* transcripts, whether draft or final, of any recorded conversation in which a defendant participated. *United States v. Finley, et al.*, No. 87 CR 364, slip op. at 5 (N.D.Ill. September 3, 1987) [available on WESTLAW, 1987 WL 17165].

This court, however, finds Judge Rovner's analysis unpersuasive in this case and rejects Hutchinson's broad-based request. This court's analysis begins with Rule 16(a)(1)(A), which in relevant part states the following:

> Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the

---

**3.** During argument on the *Finley* tapes, Hutchinson raised a thorny issue not presently ripe for resolution. The investigation that led to Hutchinson's indictment in *Finley* produced over 2200 hours of tapes, a large portion of which contain conversations including Hutchinson. If the government in fact offers one of the *Finley* tapes in this case to impeach Hutchinson, he of course is entitled under the rule of completeness to introduce any writings or tapes which qualify or explain the portion offered by the government. *See United States v. Sweiss*, 814 F.2d 1208, 1211–12 (7th Cir.1987). Hutchinson intimated that, due to the volume of tapes in

*Finley,* he has been unable to review them all as of yet and that therefore the admission of a *Finley* tape in this case would be unfair because another unreviewed tape may complete the conversation in the offered tape. At the time this argument was made, however, Hutchinson did not have the government's *Finley* designations. Consequently, although the court finds Hutchinson's argument to be compelling on its face, the court will reserve ruling on the admissibility of the *Finley* tapes until after the defendant has reviewed the designations and there has been further argument on this issue.

government; the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogatories by any person then known to the defendant to be a government agent; and recorded testimony of the defendant before a grand jury which relates to the offense charged.

Judge Rovner ordered production of the draft transcripts as "written or recorded statements made by the defendant." *Finley*, slip op. at 3. Although the transcripts at issue in *Finley* admittedly were not "written" by the defendant, my colleague cited *United States v. Walk*, 533 F.2d 417, 418 (9th Cir.1975) for the proposition that "[a] statement need not be actually written or typed by the defendant to be defendant's 'written statement'; for example, a stenographer's transcription or a government interviewer's relatively contemporaneous writings may be considered written statements of the defendant." *Id.* She also relied in part on the following quotation from the Seventh Circuit in *United States v. Feinberg*, 502 F.2d 1180 (7th Cir. 1974), *cert. denied*, 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975):

> A defendant's statement is discoverable when it or an account thereof is "written or recorded" (Rule 16(a)(1)) promptly after the statement is made. Where a written record is contemplated when the statement is made and an account of the statement is eventually written down, the writing should be discoverable even if there was some delay.

*Id.* Although the next portion of the opinion was not cited by Judge Rovner in *Finley*, the court in *Feinberg* went on to add the following:

> But where the statement is originally memorialized only in the recollection of a witness, then it is not discoverable even

if that witness' recollection is eventually written or recorded.

*United States v. Feinberg*, 502 F.2d 1180, 1183 (7th Cir.1974), *cert. denied*, 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975).

■ The rule also requires, however, that the written or recorded statement be "relevant." A statement is "relevant" if it is exculpatory or if the government intends to offer it as evidence. *See* 8 J. Moore, *Moore's Federal Practice* ¶ 16.04[1], at 16–59 (2d ed. 1986). Arguably, a statement which is not admissible also is "relevant" if its disclosure would lead to the discovery of admissible evidence. *Cf.* Fed.R.Civ.P. 26(b)(1) ("It is not ground for objection that the information sought [in a civil case] will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence"). By requiring that a statement satisfy one of the aforementioned standards for relevance, the court is ruling in accordance with the purpose of the rule, i.e., "to enable [the] defendant to obtain prior to trial any of his own statements relevant to the crime charged against him so that he will be able to prepare properly for *the evidence* that may be introduced against him at trial." *See Gleason*, 616 F.2d at 24 (emphasis added).

The written statements on the transcripts will not constitute the evidence in the case; the tapes themselves will. The court will only allow the transcripts to be used as an aid to the jury's understanding of what is in fact said on the tapes which the court did order disclosed.[4] The court has ordered production of the final transcripts *not* because they contain "relevant" statements of the defendant but rather because the defendant is entitled to decide if he is going to attack the accuracy of the transcripts or if he will submit alternative transcripts for the court to consider.[5] *See* 8 *Moore's Federal Practice* ¶ 16.04[1] at

---

**4.** For the Seventh Circuit's recent statements regarding appropriate use of transcripts of tapes, *see United States v. Puerta Restrepo*, 814 F.2d 1236, 1242 (7th Cir.1987); *United States v. Allen*, 798 F.2d 985, 1002–03 (7th Cir.1986).

**5.** Although in its brief to Judge Rovner the government hinted that the transcripts may be discoverable under Rule 16(a)(1)(C), the court

cannot agree because the court will not permit use of the transcripts by the government as "evidence," but rather only as aids. To the extent the courts in the cases cited by Judge Rovner take a different position regarding the government's obligations concerning transcripts under Rule 16, *see Finley*, slip op. at 3–4 (cases cited therein), this court respectfully refuses to adopt their reasoning.

16–57 (the government "is not generally obligated to provide defense counsel with the original tapes or with transcripts of the tapes"). Because the court has so restricted the use of transcripts at trial and because the defendant has not made an argument that the drafts will lead to the discovery of admissible evidence, the only arguable basis for disclosure of the drafts is that the defendant could use a draft to impeach a witness testifying to the accuracy of a final transcript which differs materially from a draft *which that witness prepared.* As such the draft would constitute not a statement of the defendant under Rule 16(a)(1)(A) but rather a statement of the witness as to what the witness believes is said on the tape. As a statement of a witness, such a draft constitutes material the government must produce only as required by the Jencks Act, 18 U.S.C. § 3500. *See Feinberg,* 502 F.2d at 1282. Consequently, the court orders the government to produce *only* those drafts which have been prepared by a government witness who will testify as to the accuracy of a final transcript used as an aid for the jury by the government during that witness' testimony.[6] The government should produce the drafts pursuant to the schedule already established for production of section 3500 material.[7]

Finally, Hutchinson seeks disclosure of memorializations of statements made by him to government agents or third parties. The government has produced the former. With regard to third parties, the court orders production consistent with the rule of *Feinberg. See Feinberg,* 502 F.2d at 1182–83.

2. Adopted or Authorized Admissions and Statements of Alleged Co-conspirators

■ The court rejects Hutchinson's request for statements that fall into the category of an admission under Federal Rules of Evidence 801(d)(2)(B–E). Since none of the admissions under that rule are statements made by the defendant, they are not discoverable under Rule 16(a)(1)(A).[8] *See United States v. Roberts,* 811 F.2d 257, 258–59 (4th Cir.1987) (in banc); 8 *Moore's Federal Practice* ¶ 16.04[1], at 16–54. *But see United States v. Gallo,* 654 F.Supp. 463, 475–79 (E.D.N.Y.1987); *United States v. Nakashian,* 635 F.Supp. 761, 773 (S.D.N.Y.1986). The court orders production of the requested statements only as required by the Jencks Act, 18 U.S.C. § 3500.

3. Documents and Tangible Objects

Pursuant to specific requests made by Hutchinson, the court ordered the government to make available to Hutchinson the following documents:

a. all client files of Patrick McClurkin and patient files of Aaron Long within the government's possession;

b. the business records of Forest Bailey for the years 1980–83 that are within the government's possession;

c. all bank records of all defendants for the years 1981–83 that are within the government's possession;

d. the tax returns, schedules, supplementary and supporting material of Hutchinson and, if the appropriate protective order is signed, Forest Bailey for the years 1980–83;

e. material provided by Hutchinson to the grand juries investigating this case and *Finley.*

Hutchinson also asked for the convening orders of grand juries, any orders extending a grand jury's term of service and any motions to extend a grand jury's term. But since those documents are matters of public record, the court denied that request.

---

**6.** In so holding, the court excludes from this order any drafts produced by government agents who will only testify as to the foundation for the tapes to be offered at trial.

**7.** Because the drafts are either not "relevant" or are section 3500 material, the court need not resolve where the drafts stand under the rule of *Feinberg. See Feinberg,* 502 F.2d at 1182–83.

**8.** Although the court initially ordered production of statements admissible under Rule 801(d)(2)(B), the court has reconsidered its earlier ruling for the reasons given by the Fourth Circuit in *Roberts.*

■ During the court's hearing on these document requests by Hutchinson, Bailey asked the court to order the government to produce documents relating to an earlier investigation done by a private agency of Robert Rasmussen, an individual co-conspirator in this case. The government submitted those documents for in camera inspection. The court found no discoverable material or exculpatory information in those documents, but in an abundance of caution asked the government to turn over the few documents in that file with Forest Bailey's name on them. The government agreed to do so. To the extent the materials contain section 3500 material of government witnesses such as Rasmussen, the government should produce that material pursuant to the schedule set for disclosure of such material.

■ Hutchinson and Bailey both requested any analysis of their tax liability done by the Internal Revenue Service or other experts. Any documents falling into this category are not discoverable under Rule 16, but to the extent the documents constitute statements of government witnesses the documents should be turned over as required by 18 U.S.C. § 3500.

### 4. Informants

The court ordered the government to affirm or deny the use of informants in this case. Because Hutchinson has made no showing of need to know *the identity* of any informant, the court rejected his motion for disclosure of identities of informants. *See United States v. Andrus*, 775 F.2d 825, 841 (7th Cir.1985).

### 5. List of Witnesses

■ Rule 16 does not require the government to disclose its witness list. *United States v. Kimberlin*, 805 F.2d 210, 233 (7th Cir.1986); *United States v. Bouye*, 688 F.2d 471, 473–74 (7th Cir.1982). The court, however, ordered the government to produce a list prior to voir dire so that the court can determine whether potential jurors know any individuals on the list of witnesses.

### 6. Evidence Admissible Under Federal Rules of Evidence 404(b) and 608(b)

The government has already disclosed the evidence it intends to introduce pursuant to Rule 404(b) in its case in chief. To the extent the government intends to use Rule 608(b) or other Rule 404(b) evidence in cross-examination or rebuttal, the court orders only that the government give the court and the defendants notice of the government's intention to offer such evidence prior to any disclosure to the jury.[9]

### 7. Electronic Surveillance or Mail Interception

The government represented neither investigative technique was used in this case.

**B.** *Bailey's Motion for Discovery, Bailey's Motion for Production of Exculpatory Material, and Jones' Motion for Disclosure of Evidence Favorable to the Defendant*

Each of these motions was stricken by the court because the defendants had failed to represent that a Rule 2.04 conference had been held and that an agreement could not be reached regarding the subject matter of the motions. *See United States v. Davis*, 673 F.Supp. 252, 255 (N.D.Ill.1987) (Williams, J.). After striking these motions, the court asked Bailey and Joyce Jones if any legitimate discovery disputes remained. Based on the defendants' failure to identify legitimate disputes, the court's present understanding is that there are no disputes.

**C.** *Hutchinson's Motion to Compel Disclosure of Impeaching and Exulpatory Information*

In this motion, Hutchinson made over fifty separate discovery requests. The court ruled orally on those requests on October 23, 1987 and will not attempt to repeat its rulings here. The court agrees with the government that much of the requested material is not exculpatory because it merely tends to show that the defendant did not personally partake in *ev-*

---

**9.** The court's ruling also applies to other defendants' motions for an order requiring the government to give notice of its intent to use Rule 404(b) or 608(b) evidence.

*ery* aspect of the alleged conspiracy or mail-fraud scheme.

### D. *Hutchinson's Motion for Early Production of Witness Statements and Brady Material*

The court ordered the government on October 23, 1987 to produce immediately any exculpatory information in their possession or of which they are aware.

■ As for witness statements, their disclosure is of course controlled by the Jencks Act, 18 U.S.C. § 3500(b). At least in this circuit, courts do not have the discretion to *order* the government to produce witness statements prior to the completion of that witness' direct-examination. *See United States v. Callahan*, 534 F.2d 763, 765–66 (7th Cir.1976), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). *Accord United States v. Algie*, 667 F.2d 569, 571 (6th Cir.1982); *United States v. Greater Syracuse Bd. of Realtors*, 438 F.Supp. 376, 383 (N.D.N.Y.1977). After the 3500 material is produced, however, the court "may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial." 18 U.S.C. § 3500(c). Given the volume of 3500 material involved in this case, the court expressed its concern about protracted delays in the trial to the government. The government in turn stated that it would produce a large portion of the 3500 material earlier than required under the statute.[10]

■ The government expressed concern, however, for the safety of two of its witnesses and suggested that for these witnesses it would prefer to disclose the 3500 material two days before the witnesses are to testify. In an in camera submission filed October 26, 1987, the government revealed the names of the witnesses as well as the specifics of two incidents. One incident involved a phone call by an anonymous male to a government witness in which the caller told the witness that if the witness testified the witness would be a "dead son-of-a-bitch." The other incident concerned a meeting of certain defendants in May of 1987 at which the defendants discussed specific means of killing potential government-witnesses. In light of the representations made in the submission, the court believes later disclosure of the 3500 material of these two witnesses is appropriate.[11]

## IV

### *Motions for a Bill of Particulars*

■ Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, a number of defendants seek the entry of an order by this court requiring the government to provide them with a bill of particulars setting forth certain information relating to the charges in the indictment. Before focusing on the merits of the motions, the court will briefly repeat the settled law in this area. A motion for a bill of particulars lies within the discretion of the trial court. *See United States v. Kendall*, 665 F.2d 126, 134 (7th Cir.1981), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982). A bill of particulars serves to insure that the defendant has notice of the nature of the charges against him and is able to plead double jeopardy in any subsequent prosecution. *See United States v. Azzarelli Constr. Co.*, 459 F.Supp. 146, 151 (E.D.Ill.1978). If the indictment adequately sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial, a bill of particulars is unnecessary. *See Kendall*, 665 F.2d at 134. In exercising its discretion on a motion such as this, the court can consider the complexity of the charges, the clarity of the indictment and the degree of discovery available to the defendant without the bill. *See United States v. Swiatek*, 632 F.Supp. 985, 988 (N.D.Ill.1986) (Norgle, J.).

---

**10.** For the schedule of production of 3500 material, see the minute order issued by this court dated October 27, 1987.

**11.** Because none of the statements in the in camera submission are discoverable under Rule 16, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) or *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the court denies Hutchinson's motion for disclosure of the submission.

## A. *Hutchinson*

In his memorandum in support of his motion for a bill of particulars, Hutchinson states that he seeks three things: the identity of any unnamed co-conspirator, the overt acts in furtherance of the conspiracies which the government contends he committed, and the government's theory of prosecution with respect to the racketeering and tax counts. Hutchinson's first two requests relate to the conspiracy charges against him in Counts One (conspiracy to commit mail fraud), Thirty–Seven (conspiracy to obstruct justice) and Forty–Five (conspiracy to defraud the United States, specifically the Internal Revenue Service). The crime of conspiracy includes an agreement between two or more persons to commit an unlawful act, the defendant's being a party to that agreement and at least one overt act committed by one of the co-conspirators in furtherance of the agreement. *United States v. Collazo*, 815 F.2d 1138, 1142 (7th Cir.1987). Each of the conspiracy counts in the instant indictment adequately sets forth the elements (including the nature of the agreements, the names of more than two of the co-conspirators and a list of overt acts committed in furtherance of each conspiracy) and gives the defendant sufficient notice of the charges against him. Furthermore, in this case, not only can the defendant discern the nature of the alleged conspiracies from the indictment; he can also consider the government's submission in support of the admissibility of co-conspirator statements under Rule 801(d)(2)(E) of the Federal Rules of Evidence.[12] Considering the indictment and the government's submission together, the court concludes that any further disclosure would be evidentiary detail inappropriate for a bill of particulars and therefore denies Hutchinson's first two requests.

The court does believe, however, that one of Hutchinson's requests has merit. In Count Thirty–Six, the grand jury charges Hutchinson with having committed a violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). To prove that Hutchinson committed such a violation, the government must establish the existence of an "enterprise" as defined in 18 U.S.C. § 1961(4). Where the alleged enterprise is a legal entity such as a corporation, the requirement is easily satisfied. *See UNR Industries, Inc. v. Continental Ins. Co.*, 623 F.Supp. 1319, 1329 (N.D.Ill.1985) (Hart, J.). But where, as in this case, the enterprise allegedly is an "association in fact," something more than that general language is required before the defendant satisfactorily can understand the nature of the charges against him.[13] For such an association in fact to be an enterprise, it must have a defined existence separate from the commission of the predicate acts which constitute a pattern of racketeering activity. *United States v. Neapolitan*, 791 F.2d 489, 500 (7th Cir.1986), *cert. denied*, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986). Since the court considers the grand jury's association-in-fact allegation to be overly vague, the court orders the government to submit a bill describing how the defendants charged in Count Thirty–Six functioned as an enterprise. *See generally Neapolitan* 791 F.2d at 500–01; *UNR Industries, Inc.*, 623 F.Supp. at 1329–30.

## B. *Tax Charges*

Both Hutchinson and Bailey request a bill of particulars specifying certain information regarding the tax charges in Counts Forty–Five through Forty–Eight. The court finds most of their requests to be reasonable. Consequently, the court first orders the government to specify in a bill of particulars the "other income" the defendants failed to report as charged in Counts Forty–Six through Forty–Eight. *See United States v. Hedman*, 458 F.Supp. 1384, 1386 n. 3 (N.D.Ill.1978) (Bua, J.);

---

**12.** The submission is entitled "Government's Proffer Regarding Co–Conspirator Statements."

**13.** The indictment charges that certain defendants were an enterprise because they were "a union or group of individuals associated in fact for the purpose of defrauding and obtaining money and property from various insurance companies by means of staging fake automobile accidents and subsequently submitting fraudulent personal injury claims, medical bills and wage losses to such insurance companies." Indictment, Count Thirty–Six ¶ 2 at 51.

*United States v. Goldstein,* 56 F.R.D. 52, 56 (D.Del.1972); *United States v. Anderson,* 254 F.Supp. 177, 185 (W.D.Ark. 1966). Second, the court orders the government to specify the method through which it intends to prove the allegations in the tax charges.[14] Without that information, the defendants will waste their valuable time and money preparing a defense to a number of different methods of proof available to the government. *See Hedman,* 458 F.Supp. at 1386; *Goldstein,* 56 F.R.D. at 55.

▮▮▮ But the court denies Hutchinson's request for further specification regarding how the conspiracy alleged in Count Forty–Five impeded the functions of the Internal Revenue Service. The answer is adequately provided on the face of the indictment, i.e., the conspiracy was constructed in such a way such that the IRS was unable to detect certain distributions of cash. Indictment, Count Forty–Five ¶ 4 at 84.

## C. *Bailey*

Bailey's remaining requests are for evidentiary detail not necessary to his understanding of the crimes charged or to pleading double jeopardy in a subsequent prosecution; on that basis, the court denies Bailey's remaining requests.

## V

### *Motions for Severance*

Defendants Margaret Neely and Cornell Stokes separately have moved for a severance pursuant to both Rules 8(b) and 14 of the Federal Rules of Criminal Procedure. Joyce Jones and Ben Israel orally joined in Neely's motion.

▮▮▮ Efficiency considerations are what lead to a joint indictment such as the one before this court. Where, as here, the defendants are allegedly participants in a

common scheme, a presumption exists that the prejudice to any single defendant caused by the confusion of a multi-defendant trial is outweighed by the economy created by reduction of the expenditure of judicial and prosecutorial time and of the time spent by witnesses coming back and forth to court. *United States v. Buljubasic,* 808 F.2d 1260, 1263 (7th Cir.1987); *United States v. Velasquez,* 772 F.2d 1348, 1352 (7th Cir.1985), *cert. denied,* 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986). Moreover, by seeing and hearing all the evidence relating to a particular scheme, the jury has a better perspective regarding all the evidence before them. *Buljubasic,* 808 F.2d at 1263. Based on the foregoing, Rule 8(b) permits joinder of defendants if the "two defendants are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense." Under the rule, each defendant need not be charged in each and every count of the indictment. *Swiatek,* 632 F.Supp. at 991. If an indictment satisfies the requirements of Rule 8(b), a defendant can obtain a severance under Rule 14 if the defendant can establish specific prejudice which he will suffer as a result of his joinder with other defendants.

### A. *Neely*

▮▮▮ The joinder of Neely is appropriate under Rule 8(b).[15] The grand jury in Counts Twenty–Three through Twenty–Six charges Neely with having committed mail fraud in furtherance of a scheme to defraud certain insurance companies. Pursuant to that scheme, Neely allegedly acted as a victim in a fake accident staged on October 30, 1982 in a parking lot on the south side of Chicago, Illinois. Although Neely claims the facts will prove otherwise, the indictment alleges that she, along with other defendants "devised and intended to devise" the scheme.[16] Indictment, Count

---

**14.** More specifically, the court orders the government to respond to request # 7 in Hutchinson's motion.

**15.** For the reasons given by the court for the court's denial of Neely's motion, the court also rejects Joyce and Israel's claims of misjoinder under Rule 8(b).

**16.** This allegation indicates that Neely's claim that the indictment does not allege the victims

acted jointly is just plain wrong. The grand jury's allegation that Neely was a member of a *single* scheme of which she was aware distinguishes this case from *Kotteakos v. United States,* 328 U.S. 750, 756, 66 S.Ct. 1239, 1243, 90 L.Ed. 1557 (1946), where the government conceded the existence of separate and distinct schemes. Unless the defendant can show the allegation is made in bad faith, the court must

Two ¶ 6 at 9. In accord with that scheme, the indictment alleges that the defendants staged 17 different fake car-accidents. For each of the accidents the modus operandi was essentially the same:

1. Bailey advised Larry Lake of the identity and whereabouts of the victim to be "hit";
2. Lake contacted the victim and advised the victim of the time and place of the accident;
3. Arrangements were made for the victim to arrive at the site (Lake either drove the victim to or met the victim at the site);
4. With two exceptions, the accidents were staged in a parking lot;
5. A car would nudge the victim, the victim would tumble to the ground, an ambulance would arrive and the victim would complain of an injury difficult to verify medically.

In the face of these allegations, the mere fact that Neely only participated in one accident is insufficient to get her a severance. If the court permitted severance on the basis of Neely's argument, each of the victims who are defendants would be entitled to a separate trial. Such a ruling would lead to maximum inefficiency—17 different trials in each of which the government would have to prove the same scheme to defraud. The Seventh Circuit recently recognized the absurdity of such trial procedure in *United States v. Schwartz,* 787 F.2d 257 (7th Cir.1986). In *Schwartz,* which also involved a scheme to defraud insurance companies through the performance of fake car-accidents, the court stated that in a case where critical common-elements of the scheme are alleged to exist it would be difficult for the jury to understand the role of any one defendant without hearing testimony on all the events relating to the scheme.[17] *United States v. Schwartz,* 787 F.2d 257, 264 (7th Cir.1987).

Neely moves in the alternative for severance pursuant to Rule 14. In support of that motion she argues first that she has to take care of her grandson during the day because her daughter goes to school. Neely says that if she were tried alone the trial would be three days instead of four to six weeks and that she could make arrangements for her grandson for those three days. Severance, however, is a harsh remedy for this situation. Instead, the court orders the government to inform Neely of the days on which testimony will be given regarding her portion of the case. That way, she only need be present for approximately the same amount of time as she would be if her case were tried separately.

Second, Neely informs the court that she received an abortion after the alleged car-accident in which she was involved. Neely initially argued that because abortion is such a divisive issue, the selection of jurors for her case will be unique, requiring that her counsel be given special leeway during voir dire. Subsequently, however, Neely asked the court *not* to inquire during voir dire about attitudes toward abortion. As a result, this basis for severance no longer exists.

Finally, Neely maintains that she needs a severance in order to obtain the exculpatory testimony of co-defendant Carl Langley, the alleged driver in her accident.

When a defendant seeks a severance to avail [herself] of allegedly exculpatory testimony from a co-defendant, a trial court ought to consider three factors: "(1) whether the co-defendant's testimony would be exculpatory; (2) whether the co-defendant would in fact testify; and (3) whether the testimony would bear on the defendant's case."

*United States v. Pavelski,* 789 F.2d 485, 491 (7th Cir.1986) (citation omitted), *cert. denied,* —— U.S. ——, 107 S.Ct. 322, 93

---

rule on the basis of that allegation. *Velasquez,* 772 F.2d at 1354–55.

**17.** The fact that Neely is not charged with obstruction of justice or making false statements does not alter this court's Rule 8(b) analysis. A conspiracy and its cover-up are parts of a common plan; hence joinder of those offenses is appropriate under the rule. *Velasquez,* 772 F.2d at 1354. This court has already noted that a defendant need not be charged in every count of an indictment for his joinder with other defendants to be proper.

L.Ed.2d 295 (1986). Because Langley's attorney represented his client would testify at this trial, the court rejected this argument and consequently denied Neely's motion for severance.

### B. *Stokes*

Cornell Stokes raises no arguments that distinguish him materially from Neely. His motion for severance is also denied.

## VI

### *Motion for Continuance*

On Thursday, October 29, 1987, Hutchinson moved to continue the trial date from Monday, November 2, 1987. The court denied that motion on Friday, October 30, 1987.[18] Pursuant to its ruling on this motion, the court gave the defendant until Friday, November 20 to produce his tape enhancements and proposed transcripts. The government is foreclosed from playing its tapes until that date.

## VII

### *Motions in Limine*

### A. *Motions to Bar/Limit Expert Testimony of the Government's Handwriting Analyst*

The court will permit the government's handwriting expert to give his opinion as to whether the "Release of Claims" of MacPherson Davis contains the signature of Perry Hutchinson. *See* Indictment, Count One ¶ 16(j) at 5. The court further ordered the government to make available to Hutchinson on Friday, October 30, 1987 any documents on which the expert had relied in formulating that opinion as well as the report in which the expert details her analysis. *See* Fed.R.Crim.P. 16(a)(1)(D). Because of the late disclosure of these materials, the government is foreclosed from mentioning the expert's opinion in opening statement.

 As for the expert's opinion regarding whether or not Bailey forged signa-

tures on certain wage-loss claims and applications for insurance, the court prohibits the government from mentioning the expert's opinion or the documents themselves in opening statement.[19] The court, however, is not going to prohibit the admission of those documents or the expert's opinion at this juncture of the trial. Should the government lay the appropriate foundation for admission of the documents,[20] the court will admit the documents. The same holds true for the expert's opinion—the court will permit the expert to give her opinion if the government lays an adequate foundation. Whether the expert can given an opinion based on a photocopy of handwriting instead of an original goes to the *weight* of her opinion, *not* the admissibility of her opinion.

### B. *Motion to Bar Admission of Bank Records*

The government represents that it does not intend to offer a document contained in Hutchinson's bank records. The court, however, does not believe an absolute bar to the admission of any bank record of Hutchinson is appropriate at this stage. Of course, should the government's position change the court will expect detailed reasoning as to what trial event precipitated the government's change of heart. The court, in deciding the admissibility of the bank record at that time, will take into consideration the volume of documents involved and the burden that would be placed on the defendant by forcing him to review these documents.

### C. *Motion to Exclude Tape and Transcripts*

 Hutchinson moved to exclude the enhanced version of certain tapes and the transcripts of all tapes because he had had inadequate time to listen to the enhanced versions, obtain his own enhanced version and compare the transcripts to the tapes. The court denied that motion. First, the

---

**18.** The court gave its reasons for the denial in open court.

**19.** This paragraph of the opinion contains the court's ruling on Bailey's motion to prohibit admission of the handwriting comparison.

**20.** The appropriate foundation will depend on the government's theory of admissibility. The government suggested that the documents are admissible both as business records under Rule 803(6) or as documents not offered for the truth but rather just to show the statements contained therein were made.

seventeen tapes the government intends to offer are not lengthy; consequently, the transcripts are not long either. Second, the government will not offer the three enhanced tapes until the second half of its case in chief, so if the defendant wants to obtain his own version he will have had over three weeks to do so. Taking all this into consideration, as well as the time of disclosure of these materials (at least two weeks before trial), the court concluded exclusion on the basis argued was inappropriate.

Hutchinson's second motion for exclusion raises more substantial issues. Hutchinson moves to exclude the following three tape recordings on the grounds that they are so inaudible as to be untrustworthy and prejudicial:

1. March 26, 1987 conversation allegedly between Verdell Alston and Hutchinson;

2. April 6, 1987 phone-conversation allegedly between McClurkin and MacPherson Davis;

3. April 6, 1987 conversation allegedly between MacPherson Davis and Hutchinson.

Tape recordings such as these are only admissible if the government establishes "by clear and convincing evidence, that the recordings are true, accurate and authentic recordings of the conversations." *See United States v. Keck*, 773 F.2d 759, 766 (7th Cir.1985). Hutchinson does not challenge that the conversations took place or that the individuals alleged to have participated in the conversations did in fact participate. Instead, he asserts that the unintelligible portions of the tapes are so substantial as to render the recordings as a whole untrustworthy. *See United States v. Robinson*, 707 F.2d 872, 877 (6th Cir. 1983).

■ The court has reviewed in camera both the tapes and government transcripts of the three conversations at issue. As for the two conversations involving Hutchinson, the court finds that only a few select portions of the two tapes are inaudible and that the transcripts on the whole accurately represent what is said on those tapes. Although a larger portion of the McClurkin–Davis tape is inaudible, the court finds that the unintelligible portion is not so great as to taint the entire tape. In listening to the tape of that third conversation, however, the court found that portions of the tape are inaudible even though the transcript states otherwise. Unless Hutchinson stipulates to the accuracy of that third transcript, the court intends to delete the unreliable portions of the transcript.[21] If Hutchinson would like to file a proposed transcript for the court to consider before the court makes its deletions, the court will allow him to do so.

■ In so ruling, the court adopts the Sixth Circuit's prescribed method for review of transcripts as outlined in *United States v. Robinson*, 707 F.2d 872 (6th Cir. 1983).[22] The court will assume that the defendants have no objection to a particular transcript unless they state otherwise in open court.[23] In case of an objection, the court will hear argument as to what portions of the transcript should be deleted or consider alternative versions of a transcript before the court rules. The court will *not* submit two alternative versions to the jury because such a practice will "inspire wholesale speculation by the parties and engender jury confusion." *Id.* at 879. *But see United States v. Chiarizio*, 525 F.2d 289, 293 (2d Cir.1975) (the proper procedure is for the jury to receive transcripts of both sides' versions).

### D. *Motion to Exclude Similar Acts Evidence*

Pursuant to Rule 404(b) of the Federal Rules of Evidence, the government intends

---

**21.** The government can still call a participant in the conversation or an agent to the stand to testify regarding their recollection of the inaudible portion of the conversations. *See Robinson*, 707 F.2d at 878.

**22.** The Seventh Circuit has yet to address "the issue of what procedures are necessary when a

substantial or merely important part of the recording is of questionable quality." *United States v. Allen*, 798 F.2d 985, 1003 (7th Cir.1986) (citing *Robinson*).

**23.** The court at this point has not heard an objection to *any* transcript to be played at trial.

**1478**

to offer evidence that will establish that, during the pendency of the scheme to defraud charged in the indictment, Bailey also approached various government witnesses with a proposal for having the witnesses' cars destroyed and having the witnesses submit false stolen-car claims to certain insurance companies. The government claims that this evidence helps to establish Bailey's intent to defraud the insurance companies victimized by the accident scheme charged in the indictment.

 Mail fraud is a specific intent crime. *United States v. Draiman,* 784 F.2d 248, 254 (7th Cir.1986). When the term "specific intent" is used in Rule 404(b) analysis, the term refers "to an element in a statute that requires a defendant to specifically intend the consequences of his or her acts." *United States v. Gruttadauro,* 818 F.2d 1323, 1328 (7th Cir.1987). As with all other acts evidence, the evidence proferred in this case must satisfy the four-part test propounded by the Seventh Circuit in *United States v. Shackleford,* 738 F.2d 776 (7th Cir.1984):

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue ..., (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Shackleford,* 738 F.2d 776, 779 (7th Cir.1984).

Bailey does not contest that the first two prongs of *Shackleford* have been met here. In mail-fraud prosecutions such as this, the government can introduce evidence pursuant to Rule 404(b) relevant to the element of specific intent "even when the defendant, possibly anticipating the damages from other-crimes evidence, seeks to avoid that damage by making no issue of intent." *Draiman,* 784 F.2d at 254. The evidence involved here is highly probative of Bailey's intent regarding the accidents alleged in the indictment because Bailey's involvement in the submission of false stolen-car claims occurred at the same time he allegedly participated in the fake-accident scheme and because both schemes involved defrauding insurance companies through the fabrication of evidence used to support claims on policies.

Instead, Bailey challenges the evidence under prongs three and four of the *Shackleford* test. Bailey first says that the court should have a hearing to determine whether the evidence is clear and convincing. The court agrees that the government needs to provide a more specific evidentiary basis for its other-acts argument than is contained in their memorandum. That, however, can be accomplished by a written proffer similar in nature to the government's proffer in support of admissibility of co-conspirator statements under Rule 801(d)(2)(E). The government should submit that proffer well in advance of its offering any other-acts evidence. Should the proffer be satisfactory, the court will conditionally admit the evidence contingent upon the court's making a clear-and-convincing finding after the evidence is introduced.

The court finds no merit in Bailey's other attack based on prong four. The court has already stated that such evidence is highly probative of Bailey's intent to commit mail fraud. Any prejudicial impact will be remedied by the appropriate limiting instruction to the jury.