*United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir.1984).

**UNITED STATES of America**

v.

**Forest BAILEY, et al.**

**No. 87 CR 276.**

United States District Court,
N.D. Illinois, E.D.

Nov. 24, 1987.

James Ferguson, Mark Pollack, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Paul M. Brayman, Chicago, Ill., for Forrest Bailey.

Elliott Samuels, Chicago, Ill., for Nolan Harrison.

Carl P. Clavelli, Schiller Park, Ill., for Carl Langley.

June Fournier, Hillside, Ill., Michael Fournier, Chicago, Ill., for Joyce P. Jones.

Louis Myers, Ann Myles, Chicago, Ill., for Steve Johnson.

Donald T. Bertucci, Chicago, Ill., for Perry Hutchinson.

Thomas Peters, Murphy, Peters, Davis & O'Brien, Chicago, Ill., for Cornell Stokes.

William H. Theis, Chicago, Ill., for Margaret Neely.

Gerald J. Collins, Chicago, Ill., for Ben Israel.

James F. Ferguson, Asst. U.S. Atty., Gil Sapir, Chicago, Ill., for Cornell Stokes.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

Nine defendants were scheduled to begin a trial before this court on Monday, November 9, 1987 on various criminal charges growing out of an alleged scheme to defraud certain insurance companies. According to the indictment, the defendants staged a number of phony car-accidents and then submitted fake personal-injury and wage-loss claims to their insurers. Jury selection began on Monday, November 2, 1987. The court completed its voir dire examination of the jury venire on Wednesday, November 4, 1987. On that date, after the parties exercised their peremptory challenges, the defendants jointly moved for the entry of an order invalidating the government's challenges on the ground that the government had excluded certain jurors because of their race, thereby violating the defendants' fifth-amendment right to equal protection of the laws. Two days later, on Friday, November 6, 1987, certain defense attorneys raised a potential conflict-of-interest problem with the court. Because of a perceived breach by a defense attorney of his duty of loyalty to his client, the court continued the trial of this matter until March 7, 1988. The main purpose of this opinion is for the court to delineate its reasons for continuing the trial date.

### I

### *Breach of the Defense Attorney's Duty of Loyalty*

The lead defendant in this case is Forest Bailey. From the time of his arraignment until Monday, November 9, 1987, Carlton Odim acted as defense counsel for Bailey. All appearances indicated that Bailey was pleased with Odim's representation and that Odim was acting vigorously to protect

the interests of his client. But on Friday, November 6, 1987, the appearances changed drastically. On that date, at the request of all defense counsel, this court held an in camera proceeding outside of the presence of the government. During that proceeding, counsel for the defendants other than Bailey informed the court that they had recently become aware of a potential conflict of interest created by Odim's prior representation of a government witness, William Long. According to the allegations made in the indictment, Long is an unindicted co-schemer who allegedly participated in the scheme to defraud the insurance companies. Indictment, Count Two ¶ 6 at 9. The indictment further alleges that Long acted as a victim in one of the seventeen fake-accidents forming the basis of that scheme. *Id.* ¶ 16(q) at 14. Odim represented Long in some capacity relating to a personal-injury claim submitted by Long to one of the insurance companies for an accident *which is the subject of the indictment.* Because Odim was not represented by counsel at the Friday proceeding, Odim made no statement on the matter until he had consulted with an attorney.

After the in camera proceeding, the court reviewed in camera a number of reports documenting government-agent interviews of potential government witnesses.[1] During the course of the review, the court stumbled upon a report which indicated that the government had been aware of the potential conflict as early as July, 1987.[2] When questioned subsequently by the court as to why the matter had not been raised by the government, a lawyer for the government responded that Odim was aware of the circumstances surrounding his representation of William Long and that he was aware of his obligations to Bailey; therefore, in the government's view it was Odim's responsibility alone to raise this matter with the court. Furthermore, since the government's witness indi-

cated that Odim no longer represents Long, government counsel concluded that no conflict existed.

On the following Monday, all counsel in the case as well as Bailey were present for a hearing on the matter. Counsel for Odim was present and represented that his client wanted to withdraw as counsel for Bailey because of an irreconcilable conflict of interest. Bailey also indicated that the events of the preceding three days had led him to reconsider Odim's representation, that Odim had never told Bailey of Odim's earlier representation of William Long, and that as a result Bailey did not trust Odim. Counsel for defendants other than Bailey then maintained that Odim's further representation of Bailey could prejudice their clients because their clients may have an interest in calling Odim to the stand to testify regarding what he knew about the accident in which William Long had been a victim.

 As a result of the matters raised at the hearing, the court was confronted with three motions inextricably linked together: Odim's motion to withdraw, Bailey's motion to substitute counsel and Bailey's motion for a continuance. The question of whether a continuance is appropriate is of course a matter within this court's discretion. *See, e.g., United States v. Hamm,* 786 F.2d 804, 806 (7th Cir.1986). The same is true for motions for substitution of counsel and to withdraw. *United States v. Hillsberg,* 812 F.2d 328, 333 (7th Cir.1987), *cert. denied,* —— U.S. ——, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987); *United States v. Morris,* 714 F.2d 669, 673 (7th Cir.1983). It is an abuse of discretion, however, for the court to deny a motion for new counsel if a demonstrated conflict of interests exists or if counsel and the defendant are "embroiled in an 'irreconcilable conflict' that is 'so great that it result(s) in

---

1. The purpose of the review related to the need for a determination of the government's obligations under the Jencks Act, 18 U.S.C. § 3500.

2. The report contains the summary of what was said at an interview performed by Special Agent Charles Barry Smith of the son of William

Long, Dr. Aaron Long. The interview was conducted on July 28, 1987. Pages two and three of the report state that Special Agent Smith questioned Aaron Long "as to the circumstances surrounding his father obtaining the legal services of Carlton Odim."

a total lack of communication preventing an adequate defense.' " *Morris*, 714 F.2d at 673. *Accord Hillsberg*, 812 F.2d at 333.

The court's decision that a continuance and substitution of counsel were appropriate was based primarily on the court's concern for Bailey's sixth-amendment right to counsel. "Unlike a civil defendant, a criminal defendant's choice of his counsel is protected by the sixth amendment." *United States v. O'Malley*, 786 F.2d 786, 789 (7th Cir.1986). Under the sixth amendment, a criminal defendant is entitled to counsel whose individual loyalties lie with that defendant. *United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir. 1986), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987); *United States v. Jeffers*, 520 F.2d 1256, 1263 (7th Cir. 1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976). Here, Bailey maintained that Odim had never discussed Odim's prior representation of William Long with Bailey, much less advised him of the potential conflict problems created by such representation. If Odim in fact had not informed Bailey of the potential conflict, Bailey had good reason to question Odim's loyalty to Bailey. Faced with the possibility of an extended continuance, the government responded first by arguing that the report of Aaron Long's interview indicated that Long had said that Bailey had recommended Odim to Long. Consequently, the government questioned the factual basis for Bailey's duty-of-loyalty claim because evidence exists that Bailey did know of Odim's representation of Long. Second, the government questioned the timing of the disclosure and feared that granting a continuance under these circumstances would establish a bad precedent for other criminal cases in which defendants had an interest in delaying the trial of their case.[3]

Weighing all factors involved, the court concluded that a continuance was the most appropriate remedy for the problems that had arisen. First, the fact that other defendants, not Bailey, had raised the issue initially made Bailey's late-breaking concern about Odim more trustworthy. Second, in considering the factual dispute regarding what Bailey knew and when he knew it, the court concluded that erring on the side of the defendant's sixth-amendment right was the appropriate course.[4] Third, regardless of Bailey's confidence in Odim, the court itself cannot rely on Odim to act appropriately as an officer of this court. Odim was or should have been aware of his duty to bring this apparent conflict to *the court's attention*, as well as his client's. *See Jeffers*, 520 F.2d at 1263 n. 11. Finally, because the court is referring the question of potential misconduct by Odim to the Attorney Registration and Disciplinary Commission and the Executive Committee,[5] it is highly unlikely that in the future other defense counsel will engage in similar misconduct in order to obtain a continuance for their client.

The main case relied on by the government, *United States v. Jeffers*, 520 F.2d

---

**3.** "Obviously a defendant has no constitutional right to dictate the time, if ever, at which he is willing to be tried simply by showing up without counsel, or with allegedly unsatisfactory counsel, whenever his case is called to trial, or by objecting that counsel then retained or assigned is not presently 'counsel of his choice.' " *Sampley v. Attorney General of North Carolina*, 786 F.2d 610, 613 (4th Cir.1986) (citations omitted), *cert. denied*, 478 U.S. 1008, 106 S.Ct. 3305, 92 L.Ed.2d 719 (1986).

**4.** The court cannot understate its dismay at the course of conduct chosen by the government. Had the government raised the problem when it was first aware of it, this factual dispute would have been of no significance. In that situation, the court could have made a determination with respect to potential conflict, informed the de-

fendant well in advance of the original trial-date of his right to conflict-free counsel and taken the appropriate steps to remedy the situation. In spite of the government's representations to the contrary, the government should not itself make an assessment of the danger of a conflict when confronted with facts of this sort. That assessment should be made by the court and the court alone. Obviously, in future cases the appropriate course of conduct is for the government to raise any potential conflict problems with the court as soon as they are aware of them. *See United States v. Cirrincione*, 780 F.2d 620, 625 (7th Cir.1985) (the government foresaw a potential conflict and immediately brought it to the court's attention).

**5.** *See* N.D.Ill. General Rule 3.51.

1256 (7th Cir.1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976), is distinguishable from this case. In *Jeffers*, a defense counsel sought to withdraw because in a different case his firm had represented an individual who was a government witness in *Jeffers*. Counsel in *Jeffers*, however, had no knowledge that his firm's former client would take the stand until the former client was called to testify. *Jeffers*, 520 F.2d at 1260. Defense counsel immediately raised the possible conflict problem with the court. *Ibid.* Except for the possible conflict immediately brought to the trial court's attention, the record reflected no reason to question the defense attorney's fidelity to his client. *Id.* at 1263. Since the defense attorney raised no matters that indicated he would not be able to cross-examine the witness completely, the court concluded no conflict existed and denied the motion to withdraw. *Id.* at 1261. In this case, the problem that has arisen is more significant than the mere cross-examination of one witness; instead, it is the breakdown of the attorney-client relationship itself (an issue not present in *Jeffers* ). Furthermore, while the defense attorney in *Jeffers* acted ethically at each step of the proceedings, the same cannot be said for Odim. The court simply will not force Bailey to go to trial with a lawyer that does not give appropriate regard to the lawyer's professional obligations.[6]

One area of discussion remains. Certain defendants other than Bailey claimed that they have the right to go to trial starting on the original trial-date without Bailey. They were wrong. Since the jury has not been sworn, jeopardy has not yet attached. *See Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978). As a result, the question of whether the court should continue the trial date of the defendants other than Bailey is also a discretionary matter. *See Hamm*, 786 F.2d at 807. The court has already discussed why efficiency considerations dictate that these defendants should be tried jointly. *United*

States v. Bailey, et al.*, 689 F.Supp. 1463, 1474–75 (N.D.Ill.1987). This six-week case will not be tried twice.

## II

### Remaining Matters

Defendant Margaret Neely moves for reconsideration of this court's earlier denial of her motion for severance. *See Bailey*, at 1474–76. The court denies her motion for the reasons already given. *Ibid.*

The court will consider motions related to the admissibility of statements pursuant to Federal Rule of Evidence 801(d)(2)(E) shortly before trial. As for defendant Nolan Harrison's motion to exclude evidence of his testimony before the grand jury, the court orders the government to respond in writing to that motion by December 11, 1987.

Due to the continuance, the court gives the government until January 11, 1988 to compile a final exhibit list and furnish the defendants with legible copies of the exhibits. The court will preclude the government from offering any document not on the exhibit list unless good cause is shown. Any objections to the admissibility of those exhibits should be filed in writing by January 25, 1988; the government's reply will be due February 5, 1988.

Any Jencks Act material already in the defendants possession is to remain in the offices of defense counsel *at all times*. The material is only to be made available to the defendants, their counsel and any office staff of counsel. Copying of the material is permitted so long as copies also remain in the offices of defense counsel. Any motions in limine based on any materials which counsel now possess should be filed by January 25, 1988; the government's reply will be due February 5, 1988.

Finally, evidence exists that potential government-witnesses have been threatened and intimidated. The court views such conduct as reprehensible and will not

---

**6.** Because this case involves a defendant's request to substitute counsel instead of a motion to disqualify defense counsel over the defendant's objections, the analysis set forth in *United*

*States v. O'Malley*, 786 F.2d 786 (7th Cir.1986) for motions to disqualify is not applicable in this case. *See O'Malley*, 786 F.2d at 790.

hesitate to revoke an individual defendant's bond should the government introduce evidence that that defendant threatened a government witness with the intention of influencing that witness' testimony. *See* 18 U.S.C. § 3148(b).