**UNITED STATES of America, Plaintiff,**

**v.**

**David J. SHIELDS and Pasquale F. DeLeo, Defendants.**

**No. 90 CR 1044.**

United States District Court, N.D. Illinois, E.D.

June 5, 1991.

Thomas M. Durkin, Michael J. Shepard, U.S. Attorney's Office, Chicago, Ill., for U.S.

Dan K. Webb, Steven F. Molo, Winston & Strawn, Chicago, Ill., for defendant David J. Shields.

Samuel V. Banks, Chicago, Ill., for defendant Pasquale F. DeLeo.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

Pending before the Court are defendant David J. Shields' Motion for Preservation and Production of Agents' and Attorneys' Notes and Draft Transcripts of All Title III Tapes and defendant Pasquale F. DeLeo's Motion for Preservation and Production of Notes of Agents and Attorneys. For the reasons set forth below, the motions are granted in part and denied in part.

### II. ANALYSIS

A. *Agent Notes*

Shields and DeLeo seek the preservation of all notes made by government officials during the investigation of this case, including "all rough notes, memoranda, resumes, synopses, etc. which were taken as part of their investigation, whether or not the contents of the same were incorporated into any official records such as, but not limited to, FBI Form 302." (Shields Motion at 1; DeLeo Motion at 1.) In addition, Shields and DeLeo seek the production of any notes associated with witness statements at such time as the government produces other materials in accordance with the Jencks Act, 18 U.S.C. § 3500.

 Insofar as the defendants are requesting the preservation of agent notes from interviews of government witnesses, the government has no objection to the

motions. (See Gov.Mem. at 69, 77.) Accordingly, to this extent, the motions for preservation are granted. However, the government objects to the motions to the extent they demand the preservation of notes other than those of agents memorializing interviews of government witnesses. The government's objection is well taken. Defendants cite no authority for the proposition that the government may be required to preserve notes and memoranda of any kind, including, for example, agent notes regarding matters other than witness interviews or notes written by informants. The authorities which defendants do cite (see Shields Motion at 2, ¶ 1; DeLeo Motion at 2, ¶ 1) speak only to the propriety of preserving notes from witness interviews. See, e.g., United States v. Ammar, 714 F.2d 238, 258–59 (3d Cir.), cert. denied, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). Moreover, Fed.R.Crim.P. 16 would appear to exempt from production internal notes and memoranda other than those concerning witness statements. See Rule 16(a)(2). Finally, the evident thrust of defendants' motions is for the preservation of notes regarding witness interviews alone. (See Shields Motion at 2–3, ¶¶ 3, 4; DeLeo Motion at 2–3, ¶¶ 2, 3.) Accordingly, the Court will order the preservation only of agent notes from witness interviews.

These notes shall be produced by the government at such time as it produces other materials within the scope of § 3500. However, as set forth in a separate order concerning Shields' request for early production of § 3500 material, the Court is without the authority to compel early production of these materials.

### B. Attorney Notes

■ Defendants also request the preservation and production of any attorney notes from witness interviews. The government objects to this request, contending that attorney notes are protected by the work product privilege and are exempt from production under Rule 16(a)(2).

Defendants offer no authority which would support their request that the government preserve and produce attorney notes. At the same time, Rule 16(a)(2) expressly provides that "this rule does not authorize the discovery or inspection of reports, memoranda, or other internal governmental documents made by the attorney for the government...." Accordingly, defendants' request for the preservation and production of attorney notes is denied.

### C. Transcripts of Electronically Monitored Conversations

■ In the course of its investigation, the government monitored and recorded a number of conversations between its cooperating witness and other individuals, including the defendants. Tapes of these conversations have been produced to the defendants, as have transcripts for most of tape-recorded the conversations. Shields now requests that any and all draft transcripts which the government prepared be preserved and produced. Shields contends that due to the difficulty of hearing the tapes themselves, the accuracy of the transcripts will be a key issue at trial and consequently the draft transcripts may be relevant to any disputes which arise as to the accuracy of the final transcripts which the government presents at trial. The government has contended that the drafts constitute protected work product, but has also indicated its willingness to produce the drafts provided that the defendants agree not to use them in court.

As the government acknowledges, the Court has considered this issue before in United States v. Finley, 1987 WL 17165 (N.D.Ill. Sept. 3, 1987) (Rovner, J.). As it has here, the government in Finley offered to produce draft transcripts but only on the condition that the defendants waive any right to use the drafts at trial. However, the Court ordered the drafts produced unconditionally, reasoning that both the tapes and any transcripts of them amounted to statements of the defendants which were discoverable as a matter of right under Rule 16(a)(1). Id. at * 2—* 4. Subsequent to this Court's ruling in Finley, Judge Ann C. Williams of this district considered the same issue and held that draft transcripts were not discoverable under Rule 16(a)(1).

*United States v. Bailey,* 689 F.Supp. 1463, 1468–70 (N.D.Ill.1987). She observed that because the tapes, rather than the transcripts, would constitute the evidence at trial, and there was no argument that draft transcripts could lead to the discovery of admissible evidence, the only way in which the draft transcripts could be used at trial would be to impeach a witness who testified to the accuracy of a final transcript which differed in some respect from the draft. *Id.* at 1470. In this context, she reasoned, the draft must be viewed not as a statement of the defendant, but of the witness who prepared the draft. *Id.* Consequently, the draft was a statement which the government was required to produce only under § 3500. *Id.* Based upon this analysis, she ordered the government to produce only those drafts which had been prepared by witnesses who would testify as to the accuracy of final transcripts and only at such time as other § 3500 materials were produced in the case. *Id.*

The Court has carefully read and considered Judge Williams' opinion in *Bailey.* Having done so, however, the Court remains convinced that its decision in *Finley* was correct. Although Judge Williams' rationale has theoretical appeal, it does not, in this Court's view, place draft transcripts in their proper perspective. Although a draft transcript, or for that matter, a final one, to some degree constitutes the statement of the person who prepared it ("this is what I believe the defendant said"), as an ultimate and practical matter the transcript amounts to the purported statement of the *defendant.* And although it is the tape recording and not the transcript which is the proper evidence of what the defendant actually said, and the jury must ultimately resort to the tape to resolve any disputes in this regard, in the final analysis the government presents both the tape and the transcript to the jury as memorializations of the defendant's statement. To treat the two as distinct—one being the defendant's statement and the other not—ignores the context in which they are offered.

Moreover, there is no legitimate basis for distinguishing between a draft transcript and a final transcript. Each is a reflection of what the defendant purportedly said on the tape, and although the government may believe the final version to be more accurate than the draft, a defendant is entitled to see both versions. Suppose the defendant had made a post-arrest statement to two government agents, and the agents had summarized the statement somewhat differently in their subsequent written reports. Surely, the government could not contend that the defendant was only entitled to see whichever report it believed most accurate; the defendant would be entitled to have both produced. So it is here. Having listened to several of the tapes in this case, the Court agrees with Shields that they are often difficult to understand. In this circumstance, there may well be disputes as to the accuracy of final transcripts, and the defendant is entitled to review without conditions not only the final versions but any and all prior drafts prepared by the government as well.

Accordingly, the Court reaffirms its opinion in *Finley* and orders the government to preserve any draft transcripts of taperecorded conversations and to unconditionally produce to the defendants the final and draft transcripts of any recorded conversations it has disclosed or will disclose to the defendants. The government is to produce such transcripts no later than June 14, 1991. Any defense objections to the accuracy of final transcripts shall be filed no later than June 21.

## III. CONCLUSION

For the reasons set forth above, defendant Shields' motion for preservation and production of agents' and attorneys' notes and draft transcripts of all Title III tapes is granted in part and denied in part. Defendant DeLeo's motion for preservation and production of notes of agents and attorneys is also granted in part and denied in part.