**UNITED STATES of America**

v.

**Wallace DAVIS, Jr.**

No. 86 CR 842.

United States District Court, N.D. Illinois, E.D.

Sept. 18, 1987.

254

Michael Shepard, Howard Pearl, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Paul Bradley, Gary J. Ravitz, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

In this criminal case, the grand jury in a six-count indictment charges that the defendant Wallace Davis, Jr. committed racketeering in violation of 18 U.S.C. § 1962(c) and extortion in violation of 18 U.S.C. § 1951(a). The indictment also charges that the defendant lied to the Federal Bureau of Investigation during its investigation of these offenses in violation of 18 U.S.C. § 1001. During the period relevant to the indictment, from September 1983 to July 1986, the defendant was the Alderman for the 27th Ward of the City of Chicago. The following are a list of motions filed in

the case and the correlative rulings made in open court.[1]

# I

## Discovery–Related Motions

At various times in this case, both the defendant and the United States filed discovery-related motions.[2] The list of those motions is as follows:

(1) Defendant Davis' Motion for Discovery and Inspection;

(2) Defendant Davis' Motion for Immediate Disclosure of Favorable Evidence;

(3) Government's Motion for Discovery.

All the above motions were stricken by the court because it considered those requests for court orders to be premature. The principles established by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) as well as Rule 16 of the Federal Rules of Criminal Procedure require the United States to disclose certain exculpatory and impeaching evidence. Rule 16 also sets forth the discovery obligations of a criminal defendant. Moreover, in this district the parties are bound by Local Criminal Rule 2.04 which further specifies the parties' discovery obligations. These rules obviously were written so that courts such as this one would not have to recreate the rules for discovery for each criminal case.

As a result, the court expects that the parties in a criminal case, as in any civil case, will present their discovery requests to the opposing party first before demanding court intervention. Such an expectation clearly is envisioned by both the federal and local rules. *See* Fed.R.Crim.P. 16(d)(2); N.D.Ill.Crim.R. 2.04(c). In this case, none of the aforementioned motions contained the required statements that a Rule 2.04 conference had been held and that an agreement could not be reached regarding the subject of the relevant motion. It is this court's practice to strike any discovery motion that fails to contain those required statements.

After striking the aforesaid motions, the court asked if either the defendant or the United States had made a request for discovery to which they were entitled and the other party had rejected that request. The defendant then requested a court order requiring the government to turn over any impeaching information regarding government informant Michael Burnett. The Supreme Court in *Giglio* held that the prosecution must turn over to the defendant "evidence affecting credibility." *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). *Accord United States v. Andrus*, 775 F.2d 825, 843 (7th Cir.1985). But for the reasons given later in this opinion and orally in court, the court does not presently believe that Burnett's credibility will be at issue in this case. Since no relevant reason now exists to impeach Burnett, the court denies the defendant's motion for *Giglio* material as it relates to Burnett. Should Burnett's credibility in fact become an issue in this case, however, the court orders the government to produce any evidence it has or is aware of that will impeach Burnett.[3]

At one of the status hearings, a sticky issue arose regarding the government's obligations under *Brady* with regard to the over 2400 hours of tapes per-

---

1. Before entering a written opinion on the matters contained herein, the court concluded that oral argument was necessary.

2. On April 1, 1987, the defendant's former attorneys, Isaiah Gant and Marianne Jackson, filed motions entitled "Motion for Disclosure of Exculpatory Evidence, Including Impeaching Information" and "Motion for Discovery and Disclosure." The defendant's present attorney, Paul Bradley, subsequently asked leave of court for withdrawal of those motions. The court consequently considers those motions to be withdrawn and therefore has not considered either of them.

3. The fact that the *Giglio* material will be turned over during the trial as opposed to pretrial does not offend the traditional notion of due process. "As long as ultimate disclosure is made before it is too late for the defendants to make use of any benefits of the evidence, due process is satisfied." *United States v. Ziperstein*, 601 F.2d 281, 291 (7th Cir.1979), *cert. denied*, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980).

taining to the investigation from which this defendant's indictment arose. At that status hearing, the defendant maintained that the government's *Brady* obligation includes careful scrutiny of all 2400 hours of tape with an eye to the defendant's case followed by affirmative copying for and production to the defendant of those specific exculpatory tapes. The government rejected this view of its obligation and responded that all the tapes had been made available to the defendant for his inspection, that the defendant had not fully availed himself of that opportunity and that defendant's counsel was seeking to have the government do his pre-trial work for him.

Unlike in other criminal cases, the government's patented response that it is "aware of its continuing obligations under *Brady* " is inadequate in this case because the issue is what the government's "obligations" are with regard to the massive number of tapes involved in this ongoing investigation. The court holds that once the government made the evidence in the government's possession accessible to the defendant that the obligations of *Brady* were satisfied. *Cf.* Fed.R.Crim.P. 16(a)(1)(C) ("Upon request of the defendant the government shall *permit the defendant to inspect and copy or photograph* ... tangible objects ... which are within the possession, custody or control of the government...." (emphasis added)). The Due Process Clause of the Fifth Amendment does not require the government first to peruse through all its evidence with an eye to the defendant's theory of the case and then to *specify* to the defendant the

evidence which supports that theory.[4] Instead, the fifth amendment prohibits "the *suppression* by the prosecution of evidence favorable to an accused." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963) (emphasis added). Stated alternatively, the fifth amendment requires the government "to *disclose* to criminal defendants favorable evidence that is material either to guilt or to punishment." *California v. Trombetta,* 467 U.S. 479, 480, 104 S.Ct. 2528, 2529, 81 L.Ed.2d 413 (1984) (emphasis added) (citations omitted). This disclosure requirement is satisfied once the government makes the relevant evidence available to the defendant.[5] *See Nassar v. Sissel,* 792 F.2d 119, 121 (8th Cir.1986) (the court implied that due process was satisfied when the prosecution gave the defendant access to an exculpatory tape).

Other than the Burnett matter and the issue regarding review of the tapes, the court's understanding as of the writing of this opinion is that no discovery dispute still exists between the parties. If the court's impression is a false one, the parties should state why on the record shortly after they receive this opinion.

## II

### Motions to Which No Objection Was Raised

The court granted the following routine motions because no objection was raised:

(1) Defendant's Motion to Preserve Handwritten Notes of Government Agents;

(2) Government's Motion for Preservation of Witness Statements;

---

4. The court is aware that the principles established by *Brady* were violated in two cases where exculpatory evidence was in possession of the government but in which the prosecuting attorneys did not know that fact. *See United States v. Jackson,* 780 F.2d 1305, 1308–09 n. 2 (7th Cir.1986) (an FBI agent knew of the existence of *Brady* material yet failed to inform the government attorney); *United States ex rel. Smith v. Fairman,* 769 F.2d 386, 391 (7th Cir. 1985) (in a habeas case, the state's attorney did not know that a ballistics officer had written an exculpatory report). Those cases are distinguishable from this one and do not violate this court's enunciated principles because in those

cases the defendant never was given access to the evidence in question.

5. Recognizing that its interpretation of *Brady* is subject to dispute, the court in an abundance of caution ordered the government to make a record regarding its procedure for reviewing the tapes at issue. The government replied by responding both orally and in writing. *See* Government's Supplemental *Brady* Submission. The government represented to the court that the government had *specifically designated* to the defendant the tapes which the government planned to introduce at trial as well as those containing arguably exculpatory information.

   (3) Government's Motion for Notice of Insanity or Expert Testimony of Defendant's Mental Condition;

   (4) Government's Motion for Notice of Alibi.[6]

## III

### Defendant's Motion for Return of Records

■ The defendant moved for an order directing the government to return his records to his attorney's office on the grounds that inspection was unacceptable at the government's office and that the government had no need for such records because the grand-jury investigation had ended. In response, the government represented on the record that those documents were still relevant to an ongoing investigation.[7] After hearing this response, the defendant then argued in a second motion that the term of the grand jury that had subpoenaed the records had expired at the time of the subpoena and that therefore "the purported transfer of the records and documents received thereby to a successor grand jury was unauthorized and illegal." Motion for Return of Records at 2.

This court denied the defendant's motion on two separate grounds. First, the government established in an in camera proffer that the documents are relevant to an investigation presently being conducted by an indisputably valid grand-jury. If the documents were in the possession of the defendant the grand jury certainly would have authority to subpoena them. Since the documents are already in the grand jury's possession, the court considers the issuance of another subpoena to the defendant for documents already turned over to be an unnecessary formality.[8]

■ Second, the defendant has been aware of the infirmity regarding the Special December 1983 Grand Jury since at least March 3, 1987.[9] Although the defendant changed counsel in April, new counsel had been on this case for over three months before he filed this motion just before the start of the trial. The court holds that the defendant's delay constituted an effective waiver of his right to object to any procedural abnormalities resulting from the acts of that grand jury.

## IV

### Defendant's Motion for a Continuance

■ This trial has been set then rescheduled numerous times, each time at the request of the defendant. One week before the September 8, 1987 trial date the defendant again moved for a continuance, this time for 30 days, on the grounds that his counsel needed that amount of time to review the huge mass of tapes relating to the underlying grand-jury investigation. As this court has already stated, the government has made those tapes available to the defendant since at least last March. The court will not approve such a lengthy continuance because the defendant has failed to avail himself of an opportunity he has had for some time. The court does believe, however, that fundamental fairness demands that the defendant have ample time to review the tapes which the government intends to introduce in its case. As a result, the court granted a continuance of the trial date to September 16, 1987.

## V

### Defendant's Motion for an Order Requiring the Government to Give Notice of Its Intent to Use Certain Evidence at Trial

Pursuant to this motion, the court ordered *both* the government and the defend-

---

**6.** The court also granted the government's motion for an order permitting the deposition of Ulrich Vogt. Apparently, however, that deposition cannot be taken due to Vogt's weak physical condition.

**7.** This fact was confirmed by the court in an in camera proceeding on the record but outside of the presence of the defendant.

**8.** At the status hearing, the government suggested that the issuance of such a subpoena would be a simple solution to the problem raised by the defendant's motion. It is not within the purview of this court, however, to respond to a suggestion by the government about how the government should conduct an investigation.

**9.** On that date this court held the arraignment of the defendant on a superceding indictment.

ant to give notice to the other party before opening statements of their intention to use evidence admissible under either Rule 404(b) or Rule 608(b) of the Federal Rules of Evidence. The only exception to this order concerned statements and reports of witnesses encompassed by the Jencks Act, 18 U.S.C. § 3500. For those statements and reports, the court ordered only compliance with the terms of the Jencks Act. The defendant's request in this motion for "any and all evidence which defendant is entitled under Rule 16 of the Federal Rules of Criminal Procedure" was stricken for the reasons given in Part I of this opinion.

## VI

### Defendant's Motion for Production of a List of the Government's Witnesses

■ The court denied this motion for the reasons given by the Seventh Circuit in *United States v. Kimberlin*, 805 F.2d 210, 233 (7th Cir.1986) and *United States v. Bouye*, 688 F.2d 471, 473–74 (7th Cir.1982). But the court did order the government to give the defendant at least one-day's notice of the witnesses the government intends to call on a particular trial day. If the government anticipates that a witness' testimony will be unusually long or complex or that the amount of impeachment material for a witness will be voluminous, two-days' notice is required.

## VII

### Motions Pertaining to the Indictment

■ The defendant moved to dismiss Counts One, Two and Three from the indictment on the basis that Count One was duplicitous and all three counts alleged mailings too remote from the schemes to sustain a prosecution under 18 U.S.C. § 1341. Subsequent to the defendant's filing of this motion, however, the grand jury issued a superceding indictment which eliminated the mail-fraud charges. As a result, the court concluded and the defendant agreed that the defendant's argument

concerning mailings was moot. Moreover, the government orally moved for dismissal of Count Three and to strike ¶¶ 11 and 12 of Count One; the court granted that motion. With regard to Count One, the court rejected the duplicity argument because it finds that Count One charges only one offense, i.e. a violation of 18 U.S.C. § 1962(c). *See United States v. Berardi*, 675 F.2d 894, 897 (7th Cir.1982). The court will insure in its verdict form that the jury will reach a unanimous verdict on each of the separate racketeering acts alleged.[10] To summarize, the court denied the motion to dismiss Counts One and Two, struck Paragraphs 11 and 12 from Count One and dismissed Count Three.

■ The defendant also moved to dismiss Count Four as duplicitous. In response, the government orally moved to amend Paragraph 1 of that count in the indictment to read "paragraphs 1, 2 and 14 of Count One" instead of "paragraphs 1, 2 and 12 of Count One." "In general, either an amendment or a variance will be allowed to stand if it does not change an 'essential' or 'material' element of the charge so as to cause prejudice to the defendant." *United States v. Cina*, 699 F.2d 853, 857 (7th Cir. 1983), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983). The court granted the government's motion to amend and denied the defendant's motion to dismiss Count Four because the court found that the defendant was not prejudiced by the amendment. It is clear from the surrounding language of Count Four and the rest of the indictment that the amendment corrects a mere typographical error in the indictment. Such amendments have been permitted by other courts in similar circumstances. *See, e.g., United States v. Neff*, 525 F.2d 361, 363 (8th Cir.1975) ("correction of a typographical error which goes to the form rather than the substance of the indictment is permissible"). Given the structure of the indictment, it is highly unlikely

---

**10.** The purpose of raising the duplicity argument is to avoid a conviction on a less than unanimous verdict. *See United States v.*

*Williams,* 737 F.2d 594, 613 (7th Cir.1984), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985).

that the defendant was misled by the typographical error.[11]

In addition to the foregoing oral motion, the government filed a written motion to amend the indictment. For the reasons given in court, the court granted the motion in its entirety. One amendment objected to by the defendant was the amendment of Count Four to attempted extortion instead of extortion. The Seventh Circuit recently held that it is proper for a court to allow an amendment of a charge to a lesser included offense. *United States v. Cova*, 755 F.2d 595, 597 (7th Cir.1985) (the trial court did not err in allowing the government to change charge of conspiracy to distribute cocaine to conspiracy to possess cocaine). Since all the elements of attempted extortion are also elements of extortion, the court concluded an amendment was proper. The court also permitted deletion of the specific amount of money the defendant allegedly received from the government informant because establishing that specific amount is not necessary to proving the crimes charged. *See Cina*, 699 F.2d at 859 (a clerical amendment regarding the date of the offense was permitted because it did not affect a material element of the crime charged). The contents of the remaining amendments can be found in the government's written motion.[12]

## VIII

### Motions in Limine

The government filed a motion in limine regarding a number of different matters that potentially may arise during the course of the trial. The first matter pertains to evidence the defendant may seek to introduce regarding Burnett. As the case now stands, the government does not intend to call on Burnett to testify;

instead, the government seeks only to offer videotape and audiotape evidence which contains statements of Burnett offered not for the truth but rather only to show the statements were made. The court has reviewed the tapes at issue and concluded the statements can be offered solely for that purpose; because each of the statements was made in the presence of either the defendant or an alleged conspirator with the defendant, the statements are admissible as non-hearsay verbal acts. *See, e.g., United States v. Carter*, 801 F.2d 78, 84 (2nd Cir.1986) (a statement is not hearsay if offered only to show what an individual was told, not to show that what he was told was true), *cert. denied*, — U.S. —, 107 S.Ct. 657, 93 L.Ed.2d 712 (1986); *United States v. Conn*, 769 F.2d 420, 422 (7th Cir.1985). Because in this scenario none of Burnett's statements would be offered for the truth, his credibility would not be an issue in the case. As a result, if Burnett is not called to testify, the defendant is precluded from offering evidence designed solely to impeach Burnett.[13] Before permitting the tapes to be played to the jury, the court will give a limiting instruction regarding the appropriate purposes for which Burnett's statements may be considered.

The court's ruling would be different if the defendant were charged with extortion in violation of 18 U.S.C. § 1951(b)(2) and the government had to rely on statements of Burnett to establish the requisite fear of the extortion victim, for in that case the credibility of Burnett would be at issue. But the defendant is no longer charged with extortion in Count Five; instead, he is charged with *attempted* extortion. Since the offense of attempted extortion is complete the moment the property is demanded but before the actual

11. Defense counsel did not argue that the error caused any confusion.

12. The motion is entitled "Government's Motion to Amend the Indictment."

13. The Federal Rules of Evidence provide only for the impeachment of witnesses, *see* Fed.R. Evid. 607, and hearsay declarants. *See* Fed.R. Evid. 806. Of course the defendant can call Burnett as a witness if a relevant reason exists for Burnett's testimony. Thus far, however, the defendant has failed to articulate any possible relevance to Burnett's testimony. Should the defendant in fact desire to call Burnett, a good-faith basis for calling him will first have to be articulated.

transfer of the property, *see United States v. Rindone*, 631 F.2d 491, 493 (7th Cir. 1980), Burnett's state of mind is irrelevant to proving the crime charged.[14]

In addition to moving to preclude impeachment of Burnett, the government also moved in limine for permission to introduce certain background information regarding Burnett. The court's understanding was that the defendant had no objection to allowing Bernard Sandow, the former employer of Burnett, to testify that based on certain unspecified conversations with Burnett, Sandow asked Burnett to go to Chicago and begin working for him to obtain business. Furthermore, the defendant had no objection to allowing the government to introduce without opening the door to Burnett's credibility the fact that Burnett was arrested by the Federal Bureau of Investigation in Tennessee on a weapons charge and reached a particular plea agreement with the government. As a result, the court granted the government's motion to introduce that agreed-upon information.

■ The last issue raised by the government regarding the case in which Burnett does not testify was the "missing witness" argument. Specifically, the government requests that if Burnett is not called that the court preclude the defendant from arguing the significance of Burnett's absence. Before the defendant can comment on the government's failure to call Burnett he must first establish that Burnett is peculiarly within the government's power to produce and that Burnett's testimony would elucidate issues in the case. *See United States v. Pollard*, 790 F.2d 1309, 1314 (7th Cir.1986); *United States v. Keplinger*, 776 F.2d 678, 701 (7th Cir.1985), *cert. denied*, ── U.S. ──, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986); *United States v. Mahone*, 537 F.2d 922, 926 (7th Cir.1976), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976). The pecu-

liarity requirement is met "both when a witness is physically available only to the opposing party and when the witness has a relationship with the opposing party 'that would in a pragmatic sense make his testimony unavailable to the opposing party regardless of physical availability.'" *Mahone*, 537 F.2d at 926 (citations omitted). A person is not considered equally available if there is a likelihood of bias on his part. *Id.* at 927. Because the defendant has not yet made such a showing, the court grants the government's request at this time. But that ruling is subject to change should the defendant make the requisite showing at a later time.

■ Although the chance that Burnett will in fact testify appears slim, the government requested that if Burnett does testify that the defendant be precluded from mentioning or offering the fact that murder charges are pending against Burnett. The court held that before the defendant can mention or offer that evidence that the appropriate foundation be laid. *See United States v. West*, 670 F.2d 675, 683 (7th Cir.1982), *cert. denied*, 457 U.S. 1124 & 1139, 102 S.Ct. 2944 & 2972, 73 L.Ed.2d 1340 (1982). The court further prohibited the defendant from attempting to impeach Sandow for his association with Burnett, a "felon." *Cf. United States v. Singleterry*, 646 F.2d 1014, 1018 (5th Cir. 1981) (the defendant's association with a convicted felon was not a proper basis for impeachment), *cert. denied*, 459 U.S. 1021, 103 S.Ct. 387, 74 L.Ed.2d 518 (1982). The court does not find such evidence to be probative of Sandow's truthfulness or untruthfulness on the stand. *See* Fed.R.Evid. 608(b).

■ The court made two further rulings regarding the defendant and Burnett. First, the court precluded the defendant from arguing or introducing evidence supporting a claim of entrapment solely on

---

14. In a memorandum recently submitted on attempted extortion, the defendant claims that since actual receipt of property is not necessary to proving attempted extortion that the court should preclude the government from introducing evidence that the defendant received money. The court rejects this argument first because

that evidence is admissible to prove Racketeering Act VI(b), i.e. violations of Ill.Rev.Stat. ch. 38, ¶¶ 33–1 and 33–3(d). Second, the evidence tends to show that the defendant in fact made the demand required to prove attempted extortion.

the basis of outrageous government conduct; that is a question of law for the court. *United States v. Stanley*, 765 F.2d 1224, 1232 (5th Cir.1985). Second, the court held that it will refuse to offer a jury instruction on an entrapment defense unless a showing is made that the defendant was not predisposed to commit the crimes with which he was charged. *See United States v. Buishas*, 791 F.2d 1310, 1313 (7th Cir.1986).

■ Additionally, other matters were raised by the government in motions in limine. Pursuant to those motions and for the reasons given in court, the court precluded the defendant from offering the following evidence:

(1) the fact that the defendant had been shot by the police, had been hospitalized and then received a substantial settlement;

(2) opinions of individuals other than the defendant regarding the propriety of the defendant's alleged criminal conduct;

(3) the fact that the defendant in uncharged transactions discharged his function as alderman in a non-corrupt fashion;

(4) the fact of, details related to or the results of the defendant's recent state criminal-trial; [15]

(5) the fact that on July 31, 1986 the defendant told someone that the money he had received from Burnett was a campaign contribution.

■ The defendant also filed a couple motions in limine. In the first, the defendant demanded that the court require a *Santiago* proffer before the court permitted the government to offer statements of alleged coconspirators pursuant to Federal Rule of Evidence 801(d)(2)(E). The government made a proffer in written form under seal. The court conditionally ruled that the proffer demonstrated by a preponderance of the evidence that Bernard Sandow, Michael Burnett (until he became an informant), Raymond Akers, Clifford Kelley, Perry Hutchinson and the defendant were members of a conspiracy to influence through bribery the decisions and actions of public officials concerning the award of certain contracts by the City of Chicago. The court also conditionally ruled that the statements made by those individuals in furtherance of the conspiracy would be admissible against the defendant.

■ The defendant also moved in limine for the court to bar the government from introducing, exhibiting or making reference to the audiotape of the dinner attended by the defendant, Burnett, Akers and Kelley at the Avanzare Restaurant and a videotape of a meeting between the defendant, Burnett and Akers. The court orally rejected most of the arguments made by the defendant. The only argument as yet not addressed by this court was the defendant's claim that the tapes are extremely unintelligible and inaudible. The defendant believes that, because so much of the tapes is inaudible, the intelligible portions are badly out of context and therefore prejudicial. The court agrees that the tapes are oftentimes difficult to understand but concludes that they are not so much so as to be prejudicial to the defendant. The defendant's concerns about the context of the audible statements goes to the weight of that evidence, not its admissibility. Cer-

---

**15.** The defendant had moved during one of several pretrial hearings to preclude reference to him as a "former alderman." The court granted that motion, but inadvertently made one such reference to the jury at voir dire. The defendant now maintains that the issue of why he lost the recent aldermanic election is before the jury, that he lost the election because of the state criminal-charges and that therefore the jury should know that he was acquitted of those charges. The court disagrees. The question of why the defendant lost that aldermanic election, held almost one-year after the latest allegations in the indictment, is wholly irrelevant to the issues in this case. Moreover, the court is not going to hold a mini-trial on an issue like this because the defendant simply will not be able to establish why the voters failed to vote him in. Finally, the court's passing reference will not prejudice the defendant in any material way.

The court also does not find that the mention to a few jurors of "other allegations" opens the door to his state-court acquittal. Those references were very oblique and did not even make clear that the state charges and not the federal charges were being referred to.

tainly the court will permit the defendant to argue those concerns to the jury at the close of the case.

## Conclusion

The court will not attempt to repeat its rulings contained in the body of this opinion. Instead, it concludes by requesting the parties to read the opinion carefully and bring any apparent misunderstandings to this court's attention as soon as possible.