**UNITED STATES of America, Plaintiff,**

v.

**Morgan FINLEY, et al., Defendants.**

**No. 87 CR 364.**

United States District Court,
N.D. Illinois, E.D.

Feb. 28, 1989.

**908**

James Holloway, Fed. Def. Program, Sulzer & Shopiro, Chicago, Ill., for John Adams.

Glenn Gutsche, Chicago, Ill., for Melvin Dubrock.

Louis Garippo and Susan G. Feibus, Chicago, Ill., for Morgan Finley.

Clinton Sims, 155 N. Michigan, # 726 Chicago, Ill., for David Hammond.

Keith Spielfogel and Robert S. Bailey, Chicago, Ill., for Marian Humes.

Donald Bertucci, Fed. Def. Program, Chicago, Ill., for Perry Hutchinson.

Lewis Myers, Fed. Def. Program, Chicago, Ill., for Charles Knox.

William Martin, Oak Park, Ill., for Michael Lambesis.

Philip Parenti, Chicago, Ill., for Clarence McClain.

Ira Raphaelson and Michael Shepard, U.S. Attorney's Office, Chicago, Ill., for the U.S.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

## I. INTRODUCTION

Defendants are charged with various offenses stemming from the FBI's "Operation Incubator" probe into possible corruption in the awarding of collection contracts by the City of Chicago and Cook County, Illinois. Relevant background information may be found in the Court's previous opinions in this case. *See United States v. Finley*, 705 F.Supp. 1272 (N.D.Ill.1988) (denying, *inter alia*, substantive motions to dismiss indictment); *United States v. Finley*, 705 F.Supp. 1297 (N.D.Ill.1988) (denying motions to dismiss based on publicity and government misconduct). Currently before the Court are various motions in limine.

## II. GOVERNMENT MOTIONS

### A. Motions Relating to Michael Burnett

#### 1. *Impeachment and Bad Acts*

The government stated in court on September 20, 1988, that it did not intend to call as a witness Michael Burnett, the informant who the government used to assist in the gathering of much of its evidence. The government has not informed the Court of any change in this position, but the government's discovery material relating to Burnett is not due until March 1, 1989 and its designation of witnesses is not due until April 3, 1989. In the event that Burnett is not called as a government witness, the government seeks to preclude introduction of evidence to impeach his credibility and evidence of any prior bad acts. Defendant McClain has filed a cross-motion in limine seeking to impeach Burnett's credibility at trial regardless of whether Burnett testifies.[1] The government's essential argument is that a party cannot impeach a person who neither testifies nor is the source of hearsay statements admitted for their truth. Although conversations in which Burnett participated will be introduced at trial, the government argues that the statements of Burnett will not be offered for their truth.

---

1. Defendants Finley and Humes have moved to adopt McClain's motions. In accordance with its usual practice, the Court has denied several blanket motions to adopt co-defendants' motions in this case. All of the Court's rulings contained in this opinion concern issues which are not affected by the different circumstances of individual defendants. These rulings thus apply to all defendants. Finley's and Humes' motions to adopt are granted for the sake of clarity.

■ The Court agrees that, as a general matter of relevance, a person who does not testify at trial and who is not the source of statements admitted for their truth is not subject to impeachment. *See, e.g., United States v. Kabbaby,* 672 F.2d 857, 863–84 (11th Cir.1982). Defendants offer a number of arguments against the applicability of this rule to the case at hand. It is to those arguments that the Court now turns.[2]

### a. Extortion Counts

■ A number of the counts in the indictment charge defendants with extortion or attempted extortion. To prove the crime of extortion, the government must present evidence of the victim's state of mind. *United States v. Tuchow,* 768 F.2d 855, 866 (7th Cir.1985). The government affirms that it "will not offer any statements of Burnett for the truth on the issue of his mental state." It certainly is the government's prerogative not to rely on such evidence to prove extortion, and defendants do not argue otherwise. Defendants do, however, take issue with the government's further statement that even if it does introduce such statements for their truth, it will "remedy any problem by proceeding only on the theory of attempted extortion." The government's argument makes no sense, for it is the introduction of the statements for their truth which would create a potential need for cross-examination. What the government apparently intends to argue is that if it is unable to prove extortion without introducing Burnett's statements for their truth on the issue of his state of mind, the government will proceed on its alternative theory of attempted extortion, which does not require proof of the victim's state of mind. Defendants argue that the victim's state of mind must be proven to establish even attempted extortion. The Court disagrees. "Since the offense of attempted extortion is complete the moment the property is demanded but before the actual transfer of the property, *see United States v. Rindone,* 631 F.2d 491, 493 (7th Cir.1980), Burnett's state of

mind is irrelevant to proving the crime charged." *United States v. Davis,* 673 F.Supp. 252, 259–60 (N.D.Ill.1987). In any event, the issue currently before the Court is not the sufficiency of the government's evidence. The issue is whether the existence of counts charging extortion or attempted extortion allows defendants to impeach Burnett even if the government does not introduce his statements for their truth. The Court holds that it does not.

■ Defendants further rely on F.R.E. 404(a)(2), which makes relevant "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused." Defendants argue that Rule 404(a)(2) permits introduction of evidence of Burnett's character because Burnett is the victim of the alleged extortion or attempted extortion. However, Rule 404(a)(2) is limited to evidence of a "pertinent" character trait. The character trait which defendants seek to establish is Burnett's "deceitful magnetism and the effect of the same upon the listener." (McClain's Reponse to Government's Motion in Limine at 6.) Defendants also rely on Rule 404(b), which allows evidence of other acts if they are relevant to a material issue other than to prove character. Defendants claim that other acts of Burnett are relevant to demonstrate "an intent, preparation or plan to deceive and 'trick'" defendants. (McClain's Response to Government's Motion in Limine at 6.) Such evidence is not, in itself, actually impeachment of Burnett but may be pertinent only to a possible entrapment defense. Accordingly, this evidence is governed by the discussion *infra* at Part I.C.

### b. Defendants' Adoption of Burnett As Witness

■ As the government notes, a party may not call a witness for the sole purpose of impeaching him. *See United States v. Webster,* 734 F.2d 1191, 1192 (7th Cir.1984); *United States v. Gorny,* 732 F.2d 597, 604 (7th Cir.1984); *United States v. Morlang,* 531 F.2d 183, 189 (4th Cir.1975). The

---

**2.** Defendant Finley argues that issues concerning impeachment of Burnett are premature.

The Court disagrees. The issues have been sufficiently framed to allow the Court to rule.

government requests that if any defendant intends to call Burnett, the defendant be required to make an advance proffer of the relevance of the testimony so that the government may raise this or similar issues. No defendant has objected to this request, and it is therefore granted. No defendant will be permitted to call Burnett as a witness unless the defendant makes a proffer, fourteen days before calling him, of the relevance of the expected testimony. No defendant will be permitted to call Burnett as a witness for the sole purpose of impeaching him. *Cf. United States v. Davis*, 673 F.Supp. 252, 259 n. 13 (N.D.Ill. 1987).

### c. Indirect Impeachment

■ The government argues that defendants should not be permitted to impeach Burnett under the guise of impeaching government witness Bernard Sandow, by whom Burnett was employed. As the government notes, questions concerning bad acts by Burnett would not be proper impeachment of Sandow. Defendants have not responded to this argument. The government's request is granted. *Cf. United States v. Davis*, 673 F.Supp. 252, 260 (N.D.Ill.1987).

### d. Rule 806

Defendants argue that Burnett is subject to impeachment pursuant to F.R.E. 806, which provides in part: "When a hearsay statement, or a statement defined in Rule 801(d)(2), (C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." As is clear from the text of Rule 806, it does not apply universally to all circumstances where a person's statements may be heard by a jury. Whether Rule 806 applies depends on the grounds on which the statements are admitted in evidence.

■ Defendants first contend that the government will introduce Burnett's taped statements for their truth pursuant to the co-conspirator hearsay exception, Rule 801(d)(2)(E). However, the government represents that Burnett's statements are not co-conspirator statements admissible pursuant to Rule 801(d)(2)(E). Rather, the government submits that Burnett's statements are admissible as "reciprocal and integrated utterance(s) between the two parties for the limited purpose of putting the responses of the [defendants] in context and making them intelligible to the jury and recognizable as admissions." *United States v. Gutierrez–Chavez*, 842 F.2d 77, 81 (5th Cir.1988) (citations omitted). *See also United States v. Rollins*, 862 F.2d 1282, 1296 (7th Cir.1988). Although the Court has not yet viewed the tapes, the Court accepts the government's representation that it will not offer Burnett's statements as co-conspirator statements. Defendants may not, therefore, utilize Rule 806 as a ground for impeachment on the basis that Burnett's statements will be admitted pursuant to Rule 801(d)(2)(E).

■ Defendants' second contention is that Rule 806 applies because Burnett's statements are admissible as party admissions pursuant to Rule 801(d)(2)(C) or (D), which provide that a statement is not hearsay if it is offered against a party and is "(C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." This argument is flawed for two reasons. First, Burnett is not, by virtue of his status as a government informant, within the scope of Rule 801(d)(2)(C) or (D). *See United States v. Powers*, 467 F.2d 1089, 1095 (7th Cir.1972), *cert. denied*, 410 U.S. 983, 93 S.Ct. 1499, 36 L.Ed.2d 178 (1973); *United States v. Santos*, 372 F.2d 177, 180 (2d Cir.1967). Second, statements are admissible as party admissions only when offered against that party. Thus even assuming that Burnett's statements could bind the government, they would be admissible as party admissions only if offered by defendants. To allow defendants to then impeach Burnett on the basis of

such admissions would be contrary to the principle that a party may not offer a statement merely for the purpose of impeaching the declarant. This principle is consistent with the provision of Rule 806 that "[i]f the party *against* whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination." (Emphasis added.)

The Court concludes that Rule 806 does not provide a basis for defendants to impeach Burnett.

### e. Adoptive Admissions

■ Defendants argue that Burnett is subject to impeachment because his statements are adoptive admissions of defendants. Rule 801(d)(2)(B) provides that a statement is not hearsay if it is offered against a party and is "a statement of which the party has manifested an adoption or belief in its truth." *See Marshall v. Young*, 833 F.2d 709, 716 (7th Cir.1987); *United States v. Young*, 814 F.2d 392, 396 (7th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 121, 98 L.Ed.2d 79 (1987). However, even assuming defendants did adopt Burnett's statements, making them admissible pursuant to Rule 801(d)(2)(B), that does not make Burnett subject to impeachment. The declarant of an adoptive admission is the one who adopts it as his own statement; the declarants would therefore be defendants, not Burnett. Thus if Burnett's statements are admissible as adoptive admissions of defendants, they may be introduced pursuant to Rule 801(d)(2)(B) only by the government. They do not afford defendants an excuse to impeach Burnett. *Cf. United States v. Rollins*, 862 F.2d 1282, 1297 (7th Cir.1988) (Confrontation Clause not violated by admission of taped conversations between defendant and informant as adoptive admissions).

### f. Assertive Conduct

■ Defendants contend that Burnett should be subject to impeachment because

his actions constitute "assertive conduct." Rule 801(a)(2) provides that "nonverbal conduct" may be a "statement" "if it is intended by the [declarant] as an assertion." Defendant's only theory for how Burnett's actions constitute assertive conduct is as follows: "[Burnett's] assertive conduct is displayed by: the elaborateness of the planned scenario; the fact that [Burnett] initiated conducts with McClain; and that [Burnett] conceived and perpetrated this activity *ab initio*." (McClain's Motion to Impeach at 9). However, even accepting McClain's description of Burnett's conduct, McClain offers no explanation of how Burnett's conduct is "intended as an assertion." Burnett is therefore not subject to impeachment on this basis.

### g. Confrontation Clause

■ Defendants argue that admission of Burnett's recorded statements violates the Confrontation Clause of the Sixth Amendment if Burnett is not subject to cross-examination. Defendants admit, however, that the Seventh Circuit has held otherwise. *See United States v. Conn*, 769 F.2d 420, 423 (7th Cir.1985) ("This circuit has adopted a *per se* rule that extrajudicial statements properly admitted under Rule 801(d)(2)(E) do not violate a defendant's constitutional right to confront witnesses."). In this case, the absence of a constitutional problem is even more clear than in *Conn*, because Burnett's statements will not be offered for the truth of the matter asserted. The Court finds that admission of the recorded statements as verbal acts which place defendants' admissions in context does not violate the Confrontation Clause.

■ In summary, the Court concludes that defendants have presented no justification for impeachment of Burnett in the event that Burnett is not called as a witness.[3]

---

3. The government seeks to exclude, as improper impeachment, evidence that the name Michael Burnett is an alias adopted by Michael Raymond. The government contends that such evidence would serve only to suggest some prior wrongdoing on the part of Burnett and is not relevant to any issue in the case. The Court is skeptical of the claim that an alias is suggestive of wrongdoing; it may be equally plausible that an undercover informant may adopt an alias for

### 2. *Background Information*

The government next seeks permission to introduce certain background information relating to Burnett. The purpose of such evidence would be to explain to the jury how the government was able to record its tapes and to establish the "background and continuity and explanation of the subsequent taped conversations." *United States v. Conn,* 769 F.2d 420, 422 (7th Cir.1985). The government proposes to introduce this background evidence by calling Bernard Sandow, who will testify that he hired Burnett to obtain municipal collection contracts, and by presenting a stipulation or testimony by other witnesses that after he was hired by Sandow, Burnett was arrested by the FBI on a weapons charge, pled guilty, and agreed to continue his activities under FBI supervision and allow the FBI to record those activities.

■■■ Defendants object on the ground that the government "seeks to submit this material as it sees fit and preclude the defense from doing so." (McClain's Response to Government's Motion in Limine at 11.) The government, of course, has not sought to preclude defendants from offering the background information described in the preceding paragraph. If defendants' argument is that introduction of this background material opens the door to impeachment of Burnett, defendants are mistaken. The background evidence does not encompass statements made by Burnett which would be offered for their truth, and thus the background information would not provide an exception to the general rule that an individual who does not testify is not subject to impeachment. The government's motion is granted. *See United States v. Davis,* 673 F.Supp. 252, 260 (N.D. Ill.1987) (granting similar motion).

### 3. *Missing Witness*

The government seeks to preclude defendants from arguing to the jury the significance of Burnett's absence in the event the government does not call him as a witness. A party may not comment on the absence of a witness if that witness is equally available to both sides. Such comment is allowed only where the witness is under the control of the adverse party. *United States v. Sblendorio,* 830 F.2d 1382, 1394 (7th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988). This control requirement is met "both when a witness is physically available only to the opposing party and when the witness has a relationship with the opposing party that would in a pragmatic sense make his testimony unavailable to the opposing party regardless of physical availability." *United States v. Mahone,* 537 F.2d 922, 926 (7th Cir.) (citations omitted), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976). The question, then, is whether Burnett is under the control of the government. The government states that it will facilitate an interview between Burnett and defense counsel, or will provide defense counsel with the name of Burnett's lawyer. The government also emphasizes that cooperation with the government does not, in itself, establish that a witness is under the government's control, citing *United States v. Keplinger,* 776 F.2d 678, 702 (7th Cir. 1985), *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986). Defendants respond by citing *Mahone,* 537 F.2d at 927, which held that a witness who is likely to be biased is not truly available to both sides.

In *Mahone,* the trial court had refused to permit the defendant's attorney to comment during closing argument on the ab-

---

security reasons. In any event, however, defendants' only objection is that they wish to present evidence of the use of an alias precisely because it is suggestive of wrongdoing. Because the Court has found no basis for impeachment of Burnett, such evidence of prior wrongdoing by Burnett is inadmissible and the government's request is granted. *Cf. United States v. Williams,* 739 F.2d 297, 299–300 (7th Cir.1984) (where only possible purpose of referring to

defendant's nickname was to show bad character, testimony as to nickname should not have been permitted).

Defendants also appear to argue that they should be allowed an opportunity to show their good faith basis for impeaching Burnett. Because the Court has found no basis for allowing such impeachment, defendant's good faith basis as to the existence of impeachment material is irrelevant.

sence of a witness. The missing witness was a state police officer who had cooperated with the United States Attorney in developing the case. The Seventh Circuit found that, although the officer was physically available to both sides, his cooperation with the federal government and his interest in "seeing his police work vindicated by a conviction" established a likelihood of bias which resulted in the witness not being equally available to both parties. 537 F.2d at 927. The court therefore held that the trial court's preclusion of a missing witness argument was error. *Id.*

In *Keplinger,* the trial court refused to allow the defendants to make a missing witness argument concerning an individual who had worked with the defendants. Again, the witness was physically available to both sides, and the issue before the court was whether the witness was effectively within the government's power to produce. The defendants emphasized that the government had immunized the witness from prosecution in order to obtain his testimony before the grand jury. The defendants argued that had the witness testified for the defense contrary to his grand jury testimony, he would have subjected himself to perjury charges. The Seventh Circuit rejected this argument and emphasized that the witness was not an informant, would not have been vindicated by a conviction, and had met with defense counsel on several occasions. 776 F.2d at 702. The court thus held that the preclusion of a missing witness argument was proper. *Id.*

■ This case is controlled by *Mahone* rather than *Keplinger.* Burnett, unlike the witness in *Keplinger,* was a government informant. Like the witness in *Mahone,* he worked closely with the federal government and has an interest in seeing defendants convicted. The Court thus finds that he has a "likelihood of bias" and "is not, in a true sense, 'equally available' to both parties." *Mahone,* 537 F.2d at 927 (citations omitted). The government's motion to preclude defendants from arguing the significance of Burnett's absence in the event that he is not called by the government is therefore denied.

### 4. *Murder Charges*

■ Regardless of whether or not Burnett testifies, the government argues that defendants should not be permitted to present evidence that Burnett has previously been charged with murder or that Burnett has filed a civil rights claim arising out of murder charges. As the government notes, evidence of arrests which have not resulted in convictions are not admissible. *See United States v. Hughes,* 658 F.2d 317, 320 (5th Cir.1981), *cert. denied,* 455 U.S. 922, 1025 S.Ct. 1280, 71 L.Ed.2d 463 (1982). Defendants have not objected to the government's request. The government's motion to preclude evidence relating to Burnett's murder charges and civil rights claim is granted.

### B. Outrageous Government Conduct

■ The government requests that defendants be precluded from arguing or introducing evidence "impugning the nature of the government's investigation and its use of Michael Burnett." Defendants have not objected to this request. The Court has already denied defendants' motions to dismiss the indictment on the ground that the government's conduct in investigating this case was so outrageous as to violate defendants' due process rights. This issue is a matter of law for determination by the Court and may not be presented to the jury. *See United States v. Davis,* 673 F.Supp. 252, 260–61 (N.D.Ill.1987). The same is true for defendants' claims that they were selectively prosecuted because of their association with Mayor Harold Washington. However, the government has framed the issue too broadly. To preclude any argument or evidence "impugning the nature of the government's investigation" could be construed as prohibiting routine defense arguments that, for example, if the defendants really were guilty, the government would have been able to find more or better evidence. Thus the government's motion is granted to the extent that it seeks to preclude defendants from arguing or presenting evidence which is not relevant to defendants' guilt but is

designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation. Such an argument may be made only within the bounds of the entrapment defense considered in the following section.

## C. Entrapment

The government seeks to preclude defendants from arguing a defense of entrapment unless they can first show evidence of a reluctance to accept money from Burnett. Defendants respond only by arguing that they will be able to demonstrate such reluctance.

■■■■■ The defense of entrapment is a matter for the jury, rather than the Court, to decide, unless the evidence of entrapment is so insubstantial that an entrapment defense is not available as a matter of law or is so overwhelming that the defense must be successful as a matter of law. *See Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988); *United States v. Ortiz*, 804 F.2d 1161, 1164 (10th Cir.1986); *United States v. Navarro*, 737 F.2d 625, 634–35 (7th Cir.), *cert. denied*, 469 U.S. 1020, 105 S.Ct. 438, 83 L.Ed. 2d 364 (1984). The issue of whether an entrapment defense is appropriate for consideration by the jury is one that generally should not be decided before trial. *United States v. Fadel*, 844 F.2d 1425, 1430–31 (10th Cir.1988). Here, the government seeks not a pretrial determination of whether an entrapment defense is available, but only an assurance that defense counsel will not argue entrapment to the jury unless and until sufficient evidence has been presented to create a jury question as to entrapment. The government's position is in accord with the case law, and its motion is granted. (Argument concerning entrapment is thus not to be included in any opening statements which are made before the government puts on its case.)

## D. Non–Corrupt Actions

The government requests that defendants be precluded from arguing or presenting evidence that they performed in a non-corrupt fashion in transactions not charged in the indictment. Both sides rely on *United States v. LeFevour*, 798 F.2d 977, 980 (7th Cir.1986), in which the court affirmed the exclusion of evidence that the defendant, a judge charged with accepting bribes to dismiss parking charges, generally dismissed parking charges even without being paid. The defendant's theory was that individuals other than the defendant had received the bribe money, and the defendant, without knowing bribes had been paid, dismissed the charges in accordance with his usual practice.

The government's reliance on *LeFevour* is misplaced. The court accepted the defendant's argument, but affirmed the exclusion of the evidence because the specific evidence offered by the defendant did not support his theory—it failed to show that the defendant's usual practice was to dismiss parking charges.

■■■■ However, defendants' reliance on *LeFevour* is also misplaced. In *LeFevour*, the defendant was able to articulate a credible theory as to the relevance of evidence that he generally dismissed parking charges. Here, in contrast, defendants have articulated no theory of how their engagement in some non-corrupt transactions shows that they are not guilty of the offenses charged in the indictment. Because defendants have not shown any relevance for such evidence, the government's motion is granted. *See also United States v. Davis*, 673 F.Supp. 252, 261 (N.D.Ill. 1987).

## E. Opinions Concerning Wrongdoing

■■■ The government seeks to preclude defendants from offering the opinions or conclusions of witnesses that defendants' conduct was not improper or illegal. Defendants argue that such evidence is relevant because it tends to negate the element of intent. The only way that such evidence could conceivably be relevant to defendants' intent is to show that defendants were unaware that what they did was illegal. Admission of such evidence would thus contravene the "time worn" maxim that "ignorance of the law is no excuse."

*United States v. Monteleone,* 804 F.2d 1004, 1009 (7th Cir.1986), *cert. denied,* 480 U.S. 931, 107 S.Ct. 1567, 94 L.Ed.2d 759 (1987). This maxim "is not an absolute rule; 'ignorance' may be a defense when it negates a mental state that is an element of the charged offense." *Id.* However, defendants have not articulated any theory of how opinion evidence that their conduct was not illegal negates a mental state that is an element of an offense charged in this case. Because defendants' only argument is the conclusory one that such evidence would negate intent, the Court will follow the general rule that the legality or normalcy of the charged conduct is an issue to be determined by the Court, not the jury. The government's motion is granted. *See also United States v. Stirling,* 571 F.2d 708, 736 (2d Cir.), *cert. denied,* 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978); *United States v. Davis,* 673 F.Supp. 252, 261 (N.D. Ill.1987).

### III. McCLAIN'S MOTIONS

Defendant McClain seeks a ruling that all of the government's tape recordings are inadmissible. Alternatively, he requests an *in camera* determination as to the accuracy of the government's transcripts.

Most of defendants' motions relating to tape recordings were disposed of in open court on February 14, 1989. The Court granted, in part, several motions for additional time to designate tapes to be offered at trial and to object to tape designations. The government and most defendants had already exchanged tentative tape designations. The Court ordered that final tape designations must be submitted by February 21, 1989,[4] and stated that no party will be allowed to introduce tape recordings which have not been timely designated.[5] The Court ordered that any objections to tape designations must be submitted by February 28, 1989,[6] and that response to the objections are due March 7, 1989.[7] The Court also specified how objections are to be made, emphasizing that objections based on audibility of tapes or accuracy of transcripts are to be specific and to refer to particular passages.

■ McClain's motion, submitted before the February 14 hearing, seeks wholesale exclusion of the tapes based on alleged inaudibility of tapes and inaccuracy of transcripts. The Court denies this motion without prejudice. If defendant wishes to challenge particular tapes, he may do so on an individualized basis. Depending on the nature of his objections and the objections of other defendants, the Court may review the tapes *in camera* to determine their admissibility. If a large number of tapes are objected to on a ground such as audibility which will require the Court's review of the tapes, the Court may request the defendants to specify a sample of the five least audible tapes. If the Court determines that those five tapes are not so inaudible as to be inadmissible, there would be no need to examine the other tapes. Conversely, the Court may ask the government to specify the five tapes which, while objected to, are the most audible. If that sample is so inaudible as to be inadmissible, the Court need not review the remaining tapes subject to audibility objections.

### IV. KNOX'S MOTIONS

A. Motions for Discovery

On January 19, 1989, defendant Knox filed a motion for an order compelling the

4. During a February 23, 1989 hearing, the Court extended the due date for McClain's designation of supplemental tapes (for which the government had not prepared transcripts) to March 6, 1989.

5. The Court recognized a limited exception for impeachment purposes. For instance, if Burnett testifies and denies making a certain recorded statement, a party may use the tape recording to impeach the witness even though that tape may not have been designated.

6. Thus McClain's motion for leave to file an additional motion prior to trial is granted to the extent of this briefing schedule.

7. This case has been pending since May 14, 1987, and on July 19, 1988, the Court postponed the trial from November 1, 1988, to May 1, 1989, in order to allow additional time for review of tapes, preparation of transcripts and submission of motions. The parties have thus had ample time to consider their tape designations and objections.

government to produce tapes, transcripts and FBI reports concerning Knox created during investigations of Knox relating to other cases. He also filed a motion for an order requiring the government to disclose whether he has been overheard in any telephone conversation by any government agent since his confinement.

In a minute order dated January 26, 1988, the Court made clear that "scrupulous compliance with Local Criminal Rule 2.04(c) will be required as to motions requesting further discovery." Rule 2.04(a) provides for discovery of certain materials by the parties in a criminal case during a pretrial conference to be held after the arraignment. Rule 2.04(b) provides that if the government declines to make requested materials available to the defense, it shall do so by written notice submitted to defense counsel and the Court. Rule 2.04(c) provides as follows:

> In the event that either party thereafter moves for additional discovery or inspection, his/her motion shall be filed within five (5) days of the pretrial conference held pursuant to A of this Rule or such later date as may be set by the Court for the filing of pretrial motions. The motion shall contain:
>
> (1) the statement that the prescribed conference was held;
>
> (2) the date of said conference;
>
> (3) the name of the Assistant U.S. Attorney with whom the conference was held; and
>
> (4) the statement that agreement could not be reached concerning the discovery or inspection that is the subject of defendant's motion.

▪ Rule 2.04 serves to facilitate the efficient use of judicial resources. It ensures that the Court will not waste time and expense resolving discovery issues as to which there exists no bona fide dispute between the parties. Accordingly, the Court routinely denies, in unpublished orders, discovery motions which fail to comply with Rule 2.04(c). *See also United States v. Davis,* 673 F.Supp. 252, 255 (N.D. Ill.1987). Knox's discovery motions fail to comply with Rule 2.04(c) and they are therefore denied.

**B. Impeachment**

▪ Defendant, in the event he decides to testify in this case, seeks to preclude the government from impeaching him by referring to or presenting evidence of his May, 1987, conviction for violating 18 U.S.C. § 1001. Defendant argues that the circumstances surrounding his 1987 conviction are completely unrelated to the matters involved in this case and that bringing the conviction to the attention of the jury would be prejudicial. However, a conviction for violating 18 U.S.C. § 1001, which prohibits false statements, comes within the scope of F.R.E. 609(a)(2), which does not permit the Court to weigh the probative value against the prejudicial effect. *See United States v. Kuecker,* 740 F.2d 496, 501–02 (7th Cir.1984). Defendant's motion is therefore denied.[8]

**C. Witness Interview**

▪ Defendant requests that the government be ordered to produce Michael Burnett to be interviewed by defendant's counsel. The government notes that it cannot order a witness to submit to an interview. However, the government has provided defendant with the name of Burnett's attorney, through whom the government understands interview requests should proceed. To the extent that providing this information grants the relief defendant seeks, his motion is moot. To the extent defendant wishes the Court to order the government to go further and actually produce Burnett for an interview, the motion is denied.

---

**8.** The government initially gave notice that it intended to introduce evidence of defendant's conviction pursuant to F.R.E. 404(b), regardless of whether defendant chooses to testify. Defendant moved to exclude the evidence, and the government then withdrew its request to introduce the conviction in its case-in-chief. Defendant's motion is therefore denied as moot.